[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-14718

_____

D.C. Docket No. 3:17-cv-00073-JZ-GMB


THOMAS F. WORTHY, individually and on behalf of those similarly situated,
JAMES D. ADAMS, individually and on behalf of those similarly situated,
WILLCOX-LUMPKIN CO., INC., individually and on behalf of those similarly
situated,

                                                                Appellants,

versus

PHENIX CITY, ALABAMA,
REDFLEX TRAFFIC SYSTEMS, INC.,

                                                                Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(July 18, 2019)

Before TJOFLAT and NEWSOM, Circuit Judges, and ANTOON,[*] District Judge.

_____

[*] Honorable John Antoon II, United States District Judge for the Middle District of Florida,
sitting by designation.

ANTOON, District Judge:

Appellants Thomas F. Worthy, James D. Adams, and Willcox-Lumpkin Co., Inc. each received citations for running red lights in Phenix City, Alabama. A red-light camera—installed and operated pursuant to Alabama statute and Phenix City ordinance—captured their alleged violations. The same state and local provisions that governed the installation and operation of the red-light cameras also created a two-part process for citation recipients to challenge their citations. But Appellants did not fully utilize the procedures provided for challenging citations, nor did they pay their fines. Instead, they filed this lawsuit in federal court challenging the ordinance under the U.S. Constitution and the Constitution of the State of Alabama.

The district court dismissed the case after determining that Appellants lacked standing under Article III of the U.S. Constitution. While we disagree in part with that determination, we conclude that dismissal of Appellants' federal claims was warranted because the complaint failed to state a claim for which relief can be granted. Appellants allege that the ordinance imposed a criminal penalty without providing constitutionally sufficient procedural safeguards. But the ordinance imposed a civil penalty, and thus the procedures prescribed by the ordinance are constitutionally sufficient. Because we conclude that Appellants have not stated any federal claims, we decline to consider their state law claims.

2

## I.    Background

### a. Phenix City's Red-Light Camera Regime

In October 2012, after authorization from the Alabama legislature, Phenix City adopted Ordinance Number 2012-21, which permitted the installation and operation of cameras to enforce traffic-control-device violations at certain intersections in Phenix City.  Phenix City contracted with Redflex Traffic Systems, Inc.—a private company specializing in red-light camera installation and operation throughout the United States—to install and operate the cameras.

The ordinance establishes a straightforward enforcement scheme.  When a motorist runs a red light at one of the covered intersections in Phenix City, a camera captures a video of the vehicle and photographs the red light and the vehicle's license plate.  A Redflex employee reviews the video and photographic evidence of the potential violations and sends the information to a Phenix City police officer, who has full discretion to issue a citation.  If the police officer decides to issue a citation, he signs a notice and directs Redflex to mail it to the registered owner of the vehicle.  The ordinance requires that the notice include: (1) the details of the violation; (2) an image of the violation; and (3) instructions on how the citation recipient should respond to the citation, including information on how to contest the citation.  Subject to a few affirmative defenses, a motorist who receives a notice of violation is liable for a $100.00 civil penalty.  These civil

3

penalties, which Phenix City contends are aimed at enhancing public safety, are not reported on the driver's driving record.

If a citation recipient opts to contest the civil penalty, he must request an administrative hearing in writing. The administrative hearing is held before a non-judicial hearing officer, and Phenix City has the burden of proving the violation by a preponderance of the evidence. Proof may be introduced via affidavit, meaning that the city is not required to produce a live witness to prove its case. If a citation recipient is found liable or fails to appear at the hearing, an additional $25.00 fee is assessed for hearing costs. Citation recipients found liable at the administrative hearing may appeal that finding to the Circuit Court of Russell County, Alabama, upon payment of the standard circuit court filing fee of $279.00. On appeal, the circuit court sits as trier of both law and fact. With the exception of the lower burden of proof, the enabling statute requires that the circuit court "use the procedures that apply to criminal convictions in municipal court." If the citation recipient prevails in circuit court, both the filing fee and the hearing costs are refunded.

### b. Appellants' Red-Light Citations

Each Appellant received a red-light citation from Phenix City. In response to his citation, Worthy requested and attended an administrative hearing. Though the hearing officer found Worthy liable for the violation, Worthy did not pursue an

appeal to circuit court because the circuit court filing fee exceeded the cost of the fine. Adams and Willcox did not challenge their citations. Appellants "have been threatened with legal action and some have been pursued through collection efforts in connection with the civil penalties imposed," but they have not paid the civil penalties assessed.

Appellants instead filed this lawsuit. They allege that the Phenix City ordinance violates their federal and state constitutional rights because it imposes penalties without providing constitutionally sufficient processes to challenge those penalties. And they claim that Redflex conspired with Phenix City to profit from the allegedly unconstitutional ordinance. Phenix City and Redflex moved to dismiss the case, arguing that Appellants lacked constitutional standing to sue and that even if they had standing, they failed to state a viable claim for relief.

The district court agreed that Appellants lacked standing to challenge the procedures provided in the ordinance "because they cannot trace any injury to a process which they failed to utilize." Concluding that all of Appellants' claims related to the ordinance's appeal procedures, the district court dismissed all of Appellants' claims without addressing whether the complaint stated any viable claims for relief.

5

## II.    Standing

### a. Standard of Review

A dismissal for lack of standing is akin to a dismissal for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See Morast v. Lance*, 807 F.2d 926, 932 n.6 (11th Cir. 1987). Thus, we review the district court's decision to dismiss the case for lack of standing *de novo*. *See McElmurray v. Consol. Gov't of Augusta–Richmond Cty.*, 501 F.3d 1244, 1250 (11th Cir. 2007).

### b. Discussion

To bring suit in federal court, a party must have constitutional standing, which is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The elements that form the "irreducible constitutional minimum of standing" are well-known: (1) "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560–61 (alterations omitted) (internal quotation marks

6

and citations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561.

Because these requirements are not "mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* Here, the standing challenge occurred at the motion-to-dismiss stage, meaning that "it may be sufficient to provide 'general factual allegations of injury resulting from the defendant's conduct.'" *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005) (quoting *Fla. Pub. Interest Research Grp. Citizen Lobby, Inc. v. EPA*, 386 F.3d 1070, 1083 (11th Cir. 2004)).

The parties agree that Appellants suffered an injury when they received the civil penalties for their red-light violations. And there can be no doubt that the relief Appellants seek—an order declaring the ordinance unconstitutional, awarding Appellants damages, and enjoining further use of red-light cameras in Phenix City—would redress their injuries. The question of causation, however, proves more vexing. This complication stems from Appellants' failure to fully utilize the allegedly unconstitutional procedures provided in the ordinance.

Whether an injury is causally connected to the alleged injury-causing government conduct turns on whether "the line of causation between the illegal

7

conduct and injury [is] too attenuated." *Allen v. Wright*, 468 U.S. 737, 752 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). Here, Appellants' shotgun complaint, *see Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015), makes it difficult to discern the types of claims they are asserting and whether they pleaded facts sufficient to causally connect those claims to the injury they suffered. *Cf. Allen*, 468 U.S. at 752 ("Typically . . . the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.").

The district court concluded that because all of the challenges in the complaint relate to the procedures provided in the ordinance for challenging the civil penalties, the complaint challenges only those procedures. But the complaint can also be read more broadly—as a challenge to the constitutionality of the ordinance as a whole. Under that reading, Appellants are not asserting that the process they received under the ordinance was constitutionally deficient because of some error, but rather that the ordinance itself is constitutionally deficient as a whole because of the procedures—or lack thereof—that it provides.

The latter reading properly characterizes Appellants' challenge to the ordinance, as Appellants seek to invalidate the whole ordinance because of the deficient procedures it provides. And at this stage, when there are two equally

8

plausible ways to read a complaint, we should adopt the reading that is most favorable to Appellants. *See La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) ("We must view the allegations of the complaint in the light most favorable to the plaintiffs, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom." (alteration omitted) (internal quotation marks omitted)).

Because Appellants are challenging the ordinance as a whole—and not just the procedures it provides—they have standing to bring their claims for damages. As noted above, the asserted "injury in fact" is the civil penalty assessed against Appellants under the ordinance. Plainly, there is a causal connection between the ordinance and this injury. And Appellants' injuries would be redressed by a court order awarding damages and declaring the ordinance unconstitutional.

In *Hughes v. City of Cedar Rapids, Iowa*, the Eighth Circuit addressed standing to challenge the appeal procedures of a similar red-light ordinance. 840 F.3d 987 (8th Cir. 2016). The court determined that the citation recipients had standing even though they did not utilize the procedures provided in the ordinance because the "alleged injury . . . [was] inadequate process directly traceable to the City." *Id.* at 994. Our conclusion here is not as broad. An abstract allegation of inadequate process is not a legally cognizable Article III injury. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its

constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."); *see also Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000) ("There is no abstract federal constitutional right to process for process's sake."). Here, the legally cognizable Article III injury is the imposition of the civil penalty pursuant to the ordinance, not the exposure to inadequate process. Accordingly, Appellants have standing to bring their claims for damages only because they challenge the ordinance as a whole, thus causally linking the ordinance to the injury that they suffered.

Our conclusion that Appellants have standing to bring their damages claims does not end the standing inquiry, however, because Appellants also seek injunctive relief. Specifically, Appellants seek an order enjoining further use of red-light cameras in Phenix City and requiring that the cameras be removed. "[T]o demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a *substantial likelihood that he will suffer injury in the future*." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999) (emphasis added) (citing *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983)); *see also Lyons*, 461 U.S. at 105 (noting that a single injury likely confers standing to bring a damages action but that "standing to seek . . . [an] injunction . . . depend[s] on whether . . . [the plaintiff] was likely to suffer future

10

injury from the [complained of government conduct]").  In determining "whether a future injury is likely to occur, we consider whether the plaintiff is likely to have another encounter with a government officer due to the same conduct that caused the past injury."  *J W by and through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1264 (11th Cir. 2018).

Here, Appellants do not have standing to seek injunctive relief because they have not sufficiently alleged that there is a substantial likelihood that they will suffer a future injury from the ordinance.  A future injury is significantly more likely "when the threatened acts that will cause injury are authorized or part of a policy," *31 Foster Children v. Bush*, 329 F.3d 1255, 1266 (11th Cir. 2003), but "[w]e generally have been unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of . . . [the relevant] injury."  *J W*, 904 F.3d at 1265 (quoting *Honig v. Doe*, 484 U.S. 305, 320 (1988)).

To potentially receive another red-light citation pursuant to the ordinance, Appellants would first have to: (1) drive to Phenix City; (2) drive on a route that would take them through one of the intersections at which a red-light camera is operating; and (3) violate the ordinance by running a red light.  And even if Appellants did that, they would not necessarily suffer a civil penalty.  A Phenix City police officer would still have to decide to issue the citation, and even then, a

11

driver still might not face a civil penalty if one of the affirmative defenses applies. This is too much. The threat of future injury here is not sufficiently real or immediate, particularly because the main event that will trigger the potential future harm is a voluntary decision by one of the Appellants to violate the law. *Cf. Fla. State Conference of NAACP v. Browning*, 522 F.3d 1153, 1162 (11th Cir. 2008) (noting that the Supreme Court has "voiced its hesitance to assume that . . . [a] plaintiff will routinely violate the law in the future and thus be brought within arms' reach of the police").

The conclusion that Appellants lack standing to assert their claims for injunctive relief is bolstered by the potential consequences of a contrary holding. Were we to hold that Appellants sufficiently alleged a likelihood of future harm by asserting that they will again violate the ordinance, litigants would be able to sufficiently plead a threat of future harm simply by alleging that they will violate a law. The result would be to say: "Want to challenge a state statute or local ordinance in federal court? All you have to do is live in (or at least close to) the jurisdiction in which the law or ordinance applies and allege that you may violate it." Opening the door of the federal courthouse to litigants with such nebulous allegations of future harm would constitute an overreach of federal equitable power. And we refuse to venture down that path. *Cf. Lyons*, 461 U.S. at 112 ("In exercising their equitable powers federal courts must recognize 'the special

12

delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'" (alteration omitted) (quoting *Stefanelli v. Minard*, 342 U.S. 117, 120 (1951))).

In sum, because Appellants received a civil penalty under the ordinance, and because they challenge the constitutionality of that ordinance as a whole, they have standing to bring their damages claims. But because Appellants have not pleaded facts sufficient to show a likelihood of future harm as a result of the ordinance, they cannot pursue their claims insofar as they seek injunctive relief.

## III.    Failure to State a Claim

Having concluded that Appellants have standing to pursue their claims for damages, we proceed to consider whether Appellants' complaint states a claim for which relief can be granted. Though Phenix City and Redflex moved to dismiss Appellants' complaint for failure to state a claim, the district court never reached that issue because it determined that Appellants lacked standing. Appellants urge us to refrain from addressing this issue because the district court did not consider it. But "a prevailing party is entitled to defend its judgment on any ground preserved in the district court," *Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 623 (11th Cir. 2015) (citing *Mass. Mut. Life Ins. Co. v. Ludwig*, 426 U.S. 479, 481 (1976)), and we "may affirm for any reason supported by the record, even if not relied upon by the district court," *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274,

1278 (11th Cir. 2015). It is thus appropriate to consider Phenix City and Redflex's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

### a. Legal Standard

When evaluating a motion to dismiss under Rule 12(b)(6), the question is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Though Federal Rule of Civil Procedure 8(a)(2) only "requires that a complaint provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)), a complaint containing only "an unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice, *id.* (quoting *Iqbal*, 556 U.S. at 678). Therefore, "[a] complaint that provides 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' is not adequate to survive a Rule 12(b)(6) motion to dismiss." *Id.* (quoting *Twombly*, 550 U.S. at 555).

This standard does not, of course, force a plaintiff to provide "detailed factual allegations" to survive a motion to dismiss under Rule 12(b)(6). *Twombly*, 550 U.S. at 555. Rather, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level, on the assumption that

14

all the allegations in the complaint are true (even if doubtful in fact)." *Id.*

(citations omitted). At bottom, "[a] claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation

omitted).

### b. *Nature of the Phenix City Ordinance*

Because Appellants allege that the ordinance's constitutional infirmity stems

from its failure to provide adequate procedures to challenge a citation, the

threshold question is whether the red-light ordinance provides for civil sanctions or

criminal punishment. Only after making that determination can we glean whether

the procedures provided in the ordinance are constitutionally sufficient.

"Whether a particular punishment is criminal or civil is, at least initially, a

matter of statutory construction." *Hudson v. United States*, 522 U.S. 93, 99 (1997).

Thus, our analysis begins by considering the label given to the sanction provided in

the ordinance by the legislative body that enacted it. *See id.* ("A court must first

ask whether the legislature, 'in establishing the penalizing mechanism, indicated

either expressly or impliedly a preference for one label or the other.'" (citation

omitted) (quoting *United States v. Ward*, 448 U.S. 242, 248 (1980))).

Here, the Alabama legislature explicitly labeled the sanction as civil. It

specifically authorized "automated traffic light enforcement in the City of Phenix

15

City, Alabama, *as a civil violation*." The legislature then described the penalty for this civil violation as "the payment of a *civil* fine, the enforceability of which shall be accomplished through *civil* action." The legislature went on, stating that "[t]he prosecution of a *civil* violation created hereby shall carry reduced evidentiary requirements and burden of proof . . . and [in] no event shall an adjudication of liability for a *civil* violation be punishable by a criminal fine or imprisonment." Additionally, the ordinance itself provides that a red-light violation caught on camera shall carry with it "a *civil* penalty of $100.00." And the ordinance also devotes an entire section to describing the effect of a violation—stating, among other things, that the civil penalty is "not a criminal conviction for any purpose" and that no "record of [the] civil penalty made under [the ordinance will] be listed, entered, or reported on any criminal record or driving record." The text thus makes clear that both the Alabama legislature and Phenix City intended for the red-light-camera ordinance to be civil in nature.

But this does not end our inquiry. Although the Alabama legislature labeled a violation of the ordinance a civil infraction, we must also ensure that the sanction prescribed in the ordinance is not a criminal penalty masquerading as a civil sanction. *See Hudson*, 522 U.S. at 99 ("Even in those cases where the legislature has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so

16

punitive either in purpose or effect as to transfor[m] what was clearly intended as a civil remedy into a criminal penalty." (alteration in original) (internal quotation marks and citations omitted)).

In examining the purpose and effect of the ordinance's enforcement scheme, multiple factors must be considered, including:

> (1) [w]hether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of *scienter*; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable to it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Id.* at 99–100 (internal quotation marks omitted) (quoting *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69 (1963)). These factors are considered "in relation to the statute on its face," *id.* at 100 (quoting *Kennedy*, 372 U.S. at 169), and "'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty," *id.* (quoting *Ward*, 448 U.S. at 249).

Taking the *Hudson* factors into account, "there is little evidence, much less the clearest proof that [is] require[d], suggesting that [the monetary penalty attached to the red-light ordinance is] 'so punitive in form and effect as to render [it] criminal despite [the Alabama legislature's] intent to the

17

contrary.'" *Id.* at 104 (quoting *United States v. Ursery*, 518 U.S. 267, 290 (1996)). The first and second *Hudson* factors suggest that this penalty is civil because monetary penalties do not involve an affirmative disability or restraint and they have not historically been regarded as punishment. *See id.* (noting that a monetary fine does not constitute an affirmative restraint because such a sanction is "certainly nothing approaching the infamous punishment of imprisonment" (internal quotation marks omitted) (quoting *Flemming v. Nestor*, 363 U.S. 603, 617 (1960))); *id.* ("[T]he payment of fixed or variable sums of money [is a] sanction which ha[s] been recognized as [enforceable] by civil proceedings since the original revenue law of 1789." (second and third alterations in original) (quoting *Helvering v. Mitchell*, 303 U.S. 391, 400 (1938))).

And the third *Hudson* factor—*scienter*—also militates in favor of a conclusion that the penalty is civil. The ordinance provides that "the owner of a motor vehicle is liable for a civil penalty of $100.00 if a motor vehicle registered to the owner proceeds into an intersection at a system location when the traffic control signal for that motor vehicle's direction of travel is emitting a steady red signal."

The fourth factor—whether the ordinance aims to punish—likewise does not indicate that the civil penalty is a criminal punishment. Though

18

Phenix City and Redflex acknowledge that the red-light-camera enforcement scheme is designed to deter red-light violations, that alone is not sufficient to transform a civil penalty into a criminal sanction. *See United States v. Melvin*, 918 F.3d 1296, 1300 (11th Cir. 2017) ("Under the fourth factor, that the penalties at issue may have a deterrent effect, 'the mere presence of this purpose is insufficient to render a sanction criminal, as deterrence may serve civil as well as criminal goals.'" (quoting *Hudson*, 522 U.S. at 105)).

Similarly, the fifth factor—whether the regulated behavior is already a crime—does not weigh in favor of finding that the civil penalty is a criminal punishment. While a traditional red-light violation in Alabama can result in a misdemeanor conviction, *see* Ala. Code § 32-5A-8, that alone does not render a sanction criminally punitive, *see Melvin*, 918 F.3d at 1300 ("[T]hat the conduct triggering penalties is also criminal in nature is alone 'insufficient to render the money penalties . . . criminally punitive.'" (quoting *Hudson*, 522 U.S. at 105)). The vast difference between the punishments provided for a red-light violation under the criminal statute and under the ordinance is illuminating. As noted above, the civil penalty assessed under the ordinance does not result in a conviction, nor is it reported on a driving record. On the other hand, violating the criminal statute can result in a misdemeanor conviction, which can lead to a series of

19

increasing fines and even imprisonment. *See* Ala. Code § 32-5A-8. And obviously such a conviction would carry with it the usual repercussions inherent in criminal traffic convictions, including a report of the conviction on the driver's criminal and driving records. That the ordinance provides for a far less severe punishment than the criminal statute further indicates that the civil penalty is not a criminal punishment.

Evaluating the sixth factor requires examining whether the sanction has an alternative, non-criminal purpose and whether the sanction is rationally related to that non-criminal purpose. Here, an alternative purpose is the promotion of public safety and the reduction of accidents caused by red-light violations. *See Smith v. Doe*, 538 U.S. 84, 102–03 (2003) (noting that public safety is a legitimate, nonpunitive purpose for a legislative enactment); *accord United States v. W.B.H.*, 664 F.3d 848, 859 (11th Cir. 2011). And a $100.00 civil penalty is certainly rationally related to that alternative purpose, as the reasonable fine could deter motorists from running red lights, thereby reducing accidents and promoting public safety.

Finally, the seventh factor probes whether the penalty is "excessive in relation to th[e] alternative purpose." *Cole v. U.S. Dep't of Agric.*, 133 F.3d 803, 807 (11th Cir. 1998). A modest $100.00 fine is not excessive in relation to the goal of promoting public safety and reducing traffic accidents.

These final two factors thus further indicate that the ordinance provides for a civil sanction and not a criminal punishment.

At bottom, it is clear that the Alabama legislature and Phenix City intended that the penalty imposed pursuant to the red-light-camera ordinance be civil. And a thorough review of the record reveals nothing weighing in favor of a determination that the penalty provided by the ordinance is criminal rather than civil. We therefore conclude—just as the Fifth Circuit did in examining a similar ordinance in *Bevis v. City of New Orleans*, 686 F.3d 277, 280 (5th Cir. 2012)—that Phenix City's red-light-camera ordinance provides for the imposition of a civil penalty rather than a criminal punishment.

### c. Appellants' Claims

Appellants' complaint asserts numerous counts against Phenix City and Redflex, but it is difficult to decipher specific challenges to the ordinance. Giving Appellants the benefit of the doubt, we construe the complaint as asserting the following federal constitutional claims: (1) denial of the right to confront their accusers in violation of the Sixth Amendment; (2) denial of protection against self-incrimination in violation of the Fifth Amendment; (3) failure to require that Phenix City prove the red-light violations beyond a reasonable doubt; (4) denial of procedural and

substantive due process in violation of the Fourteenth Amendment; (5)

denial of the right to petition the government in violation of the First

Amendment; and (6) conspiracy to violate Appellants' constitutional rights.[1]

Appellants also seek an order declaring the ordinance unconstitutional.

Appellants' federal constitutional challenges are considered below.

### i.  Fifth and Sixth Amendment Claims

Appellants first assert that the ordinance imposed a criminal penalty

without providing sufficient Fifth and Sixth Amendment protections.  These

protections, however, are only guaranteed during a criminal prosecution, and

because the ordinance imposes a civil sanction, these claims fail.

Appellants' challenge based on the Confrontation Clause of the Sixth

Amendment is foreclosed by the Constitution's text.  *See* U.S. Const. amend.

VI ("In all *criminal prosecutions*, the accused shall enjoy the right . . . to be

confronted with the witnesses against him . . . ." (emphasis added)).  And

while "the fifth amendment privilege against self-incrimination [can]

permit[] a person 'not to answer official questions put to him in any . . .

---

[1] Appellants brought their constitutional claims pursuant to 42 U.S.C. § 1983, which allows individuals to sue local government entities.  But to subject a municipality to liability, Appellants must allege that a municipal policy "cause[d] a constitutional injury." *Am. Fed'n of Labor & Congress of Indus. Orgs. v. City of Miami, Fla.*, 637 F.3d 1178, 1187 (11th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)).  We need not, however, spend time sorting through the morass that usually accompanies § 1983 claims against municipalities because—as we detail below—Appellants have not sufficiently pleaded that they suffered a constitutional injury.

proceeding, civil or criminal, formal or informal,'" it only applies "where the answers might incriminate [that person] . . . in future criminal proceedings." *Erwin v. Price*, 778 F.2d 668, 669 (11th Cir. 1985) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)). Appellants have not alleged that they—or anyone else—faced the prospect of being compelled to provide incriminating information in response to official questions. Nor have they alleged that there was even a remote threat of future criminal prosecution. *Cf. United States v. Verdugo-Urquidez*, 494 U.S. 259, 264 (1990) (noting that "[t]he privilege against self-incrimination guaranteed by the Fifth Amendment is a fundamental trial right of criminal defendants" and thus a violation of that right "occurs only at trial"). Accordingly, Appellants have failed to state a claim for a violation of their Fifth Amendment right against self-incrimination.

Appellants also claim that the ordinance allows imposition of a criminal penalty without requiring proof beyond a reasonable doubt. But "the 'beyond a reasonable doubt' standard historically has been reserved for criminal cases," *Addington v. Texas*, 441 U.S. 418, 428 (1979), because "[t]his unique standard of proof, not prescribed or defined in the Constitution, is regarded as a critical part of the 'moral force of the criminal law,'" *id.* (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). We thus

23

"should hesitate to apply [the reasonable-doubt standard] too broadly or casually in noncriminal cases." *Id.* Appellants here do not face a criminal proceeding, and they identify no constitutional flaw in failing to extend the reasonable-doubt standard to the civil proceedings at issue in this case. Thus, Appellants also fail to state a claim based on their reasonable-doubt theory.

### ii. First Amendment Claim

Next, Appellants assert that the appeal process established by the ordinance divests them of their right to petition the courts for redress of grievances because no court has jurisdiction to hear their challenges to the red-light citations. But the plain language of the enabling act that authorized Phenix City to pass the red-light-camera ordinance says otherwise. That act specifically provides that a citation recipient found liable after the administrative hearing may appeal that finding to the Circuit Court of Russell County, Alabama, which sits as trier of both law and fact. And Appellants concede in their brief that a citation recipient may take such an appeal. Appellants have thus failed to sufficiently allege that their access to the courts is anything less than "adequate, effective, and meaningful." *Chappell v. Rich*, 340 F.3d 1279, 1282 (11th Cir. 2003).

24

### iii. Fourteenth Amendment Claims

Appellants next allege that the appeal process established by the ordinance violates their substantive and procedural due process rights in violation of the Fourteenth Amendment. But Appellants have not pleaded sufficient facts to state either a substantive or a procedural due process claim.

### 1. Substantive Due Process

At the outset, we note that we are not certain whether Appellants are alleging a claim for a substantive-due-process violation because the ordinance violates their fundamental rights or because it is not rationally related to a legitimate government purpose. We thus consider both types of substantive due process claims.

Ordinarily, "[t]he substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)). The "[s]ubstantive due process analysis must [therefore] begin with a careful description of the asserted [fundamental] right." *Reno v. Flores*, 507 U.S. 292, 302 (1993) (internal quotation marks omitted). To the extent that Appellants attempt to base their substantive due process claims on the

25

alleged infringement of their fundamental rights to confront their accusers, to be protected by the privilege against self-incrimination, and to a judicial forum in which to bring their challenges, those claims—brought under the First, Fifth, and Sixth Amendments—have already been rejected. *Cf. Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989))).

Additionally, Appellants do not identify what other fundamental rights Phenix City has allegedly infringed upon. Appellants bear the burden of setting forth facts that entitle them to relief. *See Greenlaw v. United States*, 554 U.S. 237, 244 (2008) ("[A]s a general rule, '[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.'" (second alteration in original) (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in judgment))). And they fail to meet that burden with respect to

their substantive due process claim based on the alleged infringement of a fundamental right.

And to the extent that Appellants are asserting that the ordinance is not rationally related to a legitimate government purpose, their substantive due process claim fares no better. We have recognized that a substantive due process challenge does not necessarily require governmental infringement of a fundamental right. *See Kentner v. City of Sanibel*, 750 F.3d 1274, 1279 (11th Cir. 2014) ("There is . . . at least one exception to this Circuit's general rule that there are no substantive due process claims for non-fundamental rights."). Where a legislative act does not infringe upon a fundamental right, "we review substantive due process challenges [to that legislative act] under the rational basis standard." *Fresenius Med. Care Holdings, Inc. v. Tucker*, 704 F.3d 935, 945 (11th Cir. 2013) (citing *Locke v. Shore*, 634 F.3d 1185, 1195–96 (11th Cir. 2011)). "[T]o survive this minimal scrutiny, the challenged provision need only be rationally related to a legitimate government purpose." *Schwarz v. Kogan*, 132 F.3d 1387, 1390–91 (11th Cir. 1998). Put another way, if there is "any conceivably valid justification" for the challenged legislative act, and if there is "any plausible link between the purpose of the [legislative act] and the methods

27

selected to further this purpose, then no violation of substantive due process exists." *Id.* at 1391.

Here, Phenix City enacted the ordinance to promote public safety by reducing the number of traffic accidents caused by red-light violations—unquestionably a legitimate government purpose. *See Smith*, 538 U.S. at 102–03. And there is certainly a conceivable connection between that purpose and the means selected to further that purpose—legalizing the use of red-light cameras to detect and deter red-light violations. Accordingly, the ordinance is rationally related to a legitimate government purpose. *See Fresenius Med. Care Holdings*, 704 F.3d at 945 (stating that a challenged legislative act will be upheld under the rational-basis standard "so long as there is any reasonably conceivable state of facts that could provide a rational basis for" the challenged legislative act (internal quotation marks omitted)).

Because Appellants fail to allege that the ordinance violated their fundamental rights, and because the ordinance is rationally related to a legitimate government purpose, Appellants fail to state a substantive due process claim.

28

## 2. *Procedural Due Process*

To state a claim for a violation of procedural due process rights, Appellants must allege (1) "a deprivation of a constitutionally-protected liberty or property interest"; (2) "state action"; and (3) "constitutionally inadequate process."  *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994).  Even assuming that Appellants were deprived of a protected property interest by Phenix City, Appellants' procedural due process claim still fails because they cannot establish that the ordinance provides constitutionally inadequate process.

"[D]ue process is a flexible concept that varies with the particular circumstances of each case."  *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).  Accordingly, "to determine the requirements of due process in a particular situation, we must apply the balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976)."  *Id.* at 1232–33.  That balancing test requires consideration of three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative

29

burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

As for the first *Mathews* factor, the private interest here is slight. A citation recipient does not have to pay anything to challenge the citation at an administrative hearing. And though it costs $279.00 to appeal to circuit court—the same filing fee for any civil action filed in Russell County Circuit Court—that fee is refundable if the citation recipient ultimately prevails. Accordingly, the only potentially erroneous deprivation that must be suffered to invoke the procedures provided in the ordinance is a modest, temporary filing fee. This is not a significant private interest. *See Yagman v. Garcetti*, 852 F.3d 859, 865 (9th Cir. 2017) ("With respect to the first *Mathews* factor, the private interest at stake is relatively modest. Any erroneous deprivation based on the City's prehearing deposit requirement is temporary, as the deposit is refunded after a successful challenge." (citing *Mackey v. Montrym*, 443 U.S. 1, 12 (1979))); *see also Mackey*, 443 U.S. at 12 ("The duration of any potentially wrongful deprivation of a property interest is an important factor in assessing the impact of official action on the private interest involved.").

Turning to the second *Mathews* factor, the risk of an erroneous deprivation here is also slight. At the administrative hearing, Phenix City

30

must prove the red-light violation by a preponderance of the evidence. If a citation recipient loses at the administrative hearing, he can appeal to the circuit court, which conducts a new trial. And at that trial the burden of proof remains a preponderance of the evidence, but the circuit court is required to "use the procedures that apply to criminal convictions in municipal court." These procedures are comprehensive. While Appellants pepper their complaint with allegations of futility and an inability to access a judicial forum, those allegations are undercut by the enabling statute and the ordinance, which explicitly provide for an appeal to circuit court. Put simply, the risk of an erroneous deprivation resulting from these procedures is slight. And it is not clear that any additional procedures would better protect Appellants' constitutional rights.

As to the final *Mathews* factor, Phenix City undeniably has an interest in the efficient resolution of disputes concerning red-light violations. Further, the additional procedures Appellants ostensibly seek—requiring that Phenix City immediately provide a full judicial hearing, prove violations of the civil ordinance beyond a reasonable doubt, and not collect any fee to appeal—would place an enormous burden on the city. It would also encourage frivolous appeals and dilatory tactics by citation recipients. And the advantage these measures would provide to citation recipients is

insignificant, as they already have access to an administrative hearing and a judicial forum.

After weighing the *Mathews* factors, we are convinced that the ordinance, through the appeal process it prescribes, provides a constitutionally sufficient method for challenging the civil penalties. The procedures are thorough and adequate, and they provide citation recipients the right to fully and fairly contest the civil penalties in a timely manner. The Constitution requires nothing more. *See Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) ("The fundamental requisite of due process of law is the opportunity to be heard. The hearing must be at a meaningful time and in a meaningful manner." (internal quotation marks and citations omitted)).

Because the procedures provided in the ordinance are constitutionally sufficient, Appellants' complaint fails to state a procedural due process claim.

### iv. Conspiracy Claim

Appellants also allege that Phenix City and Redflex conspired to profit from depriving Appellants of their constitutional rights. "A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right." *Grider v. City of Auburn, Ala.*, 618 F.3d

1240, 1260 (11th Cir. 2010). A plaintiff attempting to state such a claim must allege that "the defendants 'reached an understanding' to violate the plaintiff's constitutional rights," *id.* (quoting *Bailey v. Bd. of Cty. Comm'rs of Alachua Cty.*, 956 F.2d 1112, 1122 (11th Cir. 1992)), and that "an actionable wrong" occurred, *id.* (quoting *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990)).

Appellants did not plead facts showing that Phenix City and Redflex reached an understanding to violate their constitutional rights. They also did not sufficiently allege a violation of their constitutional rights. Accordingly, Appellants fail to state a conspiracy claim.

### v. Declaratory Judgment

Appellants also seek a declaratory judgment—an order declaring that the ordinance is unconstitutional. But this claim is moot because Appellants failed to sufficiently allege that the ordinance violated their constitutional rights.

## IV.   Conclusion

To summarize, we vacate the district court's order dismissing Appellants' complaint.

Unlike the district court, we conclude that Appellants have standing to challenge Phenix City's red-light-camera ordinance. Because Appellants

33

allege that they were injured when they received a civil penalty pursuant to the ordinance and because they challenge the constitutionality of the ordinance as a whole, they have standing to bring their claims for damages. However, Appellants lack standing to bring their claims for injunctive relief because they have not sufficiently alleged a threat of future harm.

Though we conclude that Appellants have standing to bring their damages claims, Appellants' federal constitutional claims (Counts I–V, IX) must nonetheless be dismissed because Appellants have not sufficiently alleged that they suffered a violation of their constitutional rights.

Finally, having disposed of Appellants' federal claims, we decline to opine—in the first instance—on the ability of Appellants to maintain their state law claims or on the validity of those claims. That task is better left to the district court.

We instruct the district court on remand to enter an amended order of dismissal consistent with this opinion.

**VACATED AND REMANDED WITH INSTRUCTIONS.**