*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 26, 2025
10:44 AM

Plaintiff-Appellee,

v

No. 359017
Ionia Circuit Court
LC No. 2019-017789-FC

DAVID OMAR ADAMS,

Defendant-Appellant.

ON REMAND

Before: CAMERON, P.J., and MURRAY, J., and GADOLA, C.J.

PER CURIAM.

In *People v Adams*, 347 Mich App 324; 14 NW3d 819 (2023), we held that the Double Jeopardy Clauses of the federal and state constitutions did not preclude defendant's trial on the charge (and subsequent conviction) of assault of a prison employee, MCL 750.197c, even though he had received a prison administrative punishment for the same offense which resulted in solitary confinement. Specifically, we held, consistent with our prior decisions, that the Department of Corrections (MDOC) policies and regulations created civil punishments, and that this regulatory scheme was not so punitive in purpose or effect to transform it into a criminal penalty. *Adams*, 347 Mich App at 330-332. We again affirm.

## I. PROCEEDINGS AFTER OUR DECISION

On defendant's application for leave to appeal, the Supreme Court remanded the matter back to this Court to further consider "whether the defendant's criminal conviction violated his right not to be subjected to multiple punishments for the same conduct," by addressing:

> the actual punishment imposed on the defendant, including the total amount of time he spent in administrative segregation and the reason for that length of time. On remand, the parties may move to remand to the Ionia Circuit Court to expand the record if necessary to address this issue. [*People v Adams*, 513 Mich 936 (2023)].

Because the amount of time defendant spent in administrative segregation, and why he did so, required factual findings, defendant moved—and we granted—a limited remand for the trial court

-1-

to make findings on these two discrete questions. *People v Adams*, unpublished order of the Court of Appeals, entered February 13, 2024 (Docket No. 359017).

After significant delays caused by the parties, a one-day evidentiary hearing was held more than a year after our remand order. At that hearing, the prosecution presented three witnesses who were current or former MDOC employees, while defendant testified, as did two expert witnesses on his behalf: one on MDOC policies and procedures, and another on psychology and the effects of solitary confinement. After receiving the evidence and argument of the parties, the court issued its findings the next day. With respect to the length of time and reasons for that length, the court found that:

1. defendant was placed into temporary segregation on August 16, 2018, after he assaulted corrections officer Jensen;

2. four days later a hearing officer found him guilty of the assault and of possessing a weapon, and imposed a 20-day detention in administrative segregation, to be completed on September 9, 2018, plus the loss of 60 days of privileges;

3. on the same day, the MDOC reclassified defendant to administrative segregation after his 20-day detention;

4. on September 9, defendant completed his 20-day detention but remained in administrative segregation because, as evidenced by the September 9 security reclassification, "his misconducts show he was a threat to the physical safety of staff and/or prisoners and a threat to the order and security of the facility"; and,

5. three years, nine months and two days later, on June 9, 2022, defendant was reclassified to general population and released from administrative segregation.

After making these findings, the court discussed the evidence showing that defendant remained in administrative segregation in a prison in Ionia County while awaiting trial on these charges, and that his trial experienced lengthy delays because of stipulations between the parties and the complications resulting from the Covid-19 pandemic restrictions.[1] In the end, the court found that as "to the actual punishment imposed on the Defendant, there were 20 days of detention explicitly imposed on Defendant as a result of his conduct, along with 60 days of loss of privileges.

---

[1] Defendant was criminally charged in 2019 and sentenced on October 12, 2021. In his response brief after remand, defendant states that he "does not challenge" the reasons for the lengthy detention, as he posits that the relevant question is whether the effects of his administrative segregation caused the civil punishment to be criminal in nature. In any event, it's worth pointing out that defendant remained in administrative segregation while awaiting trial not only because of his security classification (see n 2), but because the only local prison that could house him did not have single cell housing in general population, which defendant required based on his security classification. Once he was sentenced, he was transferred to the Baraga correctional facility on December 1, 2021, where his classification was again reviewed and continued in January 2022, until a re-evaluation on June 9, 2022, when he was re-introduced into the general population.

However, the additional time spent in administrative segregation, while not explicitly imposed as a punishment, this Court finds it to be actual punishment imposed as a direct result of his conduct."[2]

The parties then filed supplemental briefs in this Court. We now turn to whether these findings impact the double jeopardy analysis contained in our prior opinion.

## II. ANALYSIS

Double-jeopardy arguments present a question of law subject to de novo review. *People v Ream*, 481 Mich 223, 226; 750 NW2d 536 (2008). Here, the question is whether, and to what extent if any, the actual length of defendant's administrative segregation is relevant to his double jeopardy argument.

We conclude that the actual punishment imposed on defendant through the MDOC regulations is not relevant to whether he was subjected to multiple criminal punishments for the same crime. Our reading of *Hudson v United States*, 522 US 93, 99-102; 118 S Ct 488; 139 L Ed 2d 450 (1997), precludes any other conclusion.[3] In *Hudson* the Court was presented with a situation where the government administratively imposed financial penalties and occupational debarment on several individuals, who were later charged in federal court with committing federal crimes for the same conduct. *Hudson*, 522 US at 95. In assessing whether that violated the Double Jeopardy Clause, the Court disavowed *United States v Halper*, 490 US 435; 109 S Ct 1892; 104 L Ed 2d 487 (1989), by making clear that in engaging in a double jeopardy analysis courts are required to focus on the face of the statute when determining if the statute imposes a civil punishment, not on the "sanction actually imposed," as *Halper* had done. *Hudson*, 522 US at 100, 102. See also *Seling v Young*, 531 US 250, 262; 121 S Ct 727; 148 L Ed 2d 734 (2001) (noting that the *Hudson* Court "expressly disapproved of evaluating the civil nature of an Act by reference to the effect that Act has on a single individual"); *Hutto v State*, 173 So3d 998, 1001 (Fla App,

---

[2] Although not relevant to our conclusion here, we disagree with the trial court's conclusion that the reason for the entire time defendant served in solitary confinement was punishment for his act of stabbing a corrections officer in the head. The record on remand is clear, essentially undisputed, and as noted, defendant does not challenge the MDOC's reasons for his lengthy detention. The record shows that, following an administrative hearing, the MDOC imposed a 20-day disciplinary segregation sanction against defendant for assaulting a prison guard. When that punishment was imposed on defendant, the MDOC reassessed defendant's security classification, increasing his security classification to administrative segregation based on defendant's long history of targeting and assaulting prison staff and other inmates. The undisputed evidence is that the reclassification was necessary for the physical safety of staff and other inmates.

[3] When the people voted to approve the new Double Jeopardy Clause of the 1963 Constitution, "they were advised that '(1) the double jeopardy protection conferred by our 1963 Constitution would parallel that of the federal constitution, and (2) that the proposal was meant to bring our double jeopardy provision into conformity with what this Court had already determined it to mean.' " *People v Smith*, 478 Mich 292, 302; 733 NW2d 351 (2007), quoting *People v Nutt*, 469 Mich 565, 590; 677 NW2d 1 (2004). As a result, and because the language of the two clauses are identical for substantive purposes, the Court generally applies the same analysis to the state and federal Double Jeopardy Clauses. *People v Beck*, 510 Mich 1, 11 n 1; 987 NW2d 1 (2022).

2015) ("In addition, courts must evaluate the double jeopardy issue in relation to the law on its face, not as it has been applied to a particular individual"); *In re Detention of Turay*, 139 Wash 2d 379, 419; 986 P2d 790 (1999) ("*Hudson* clearly stands for the proposition that, in performing double jeopardy analysis, a court must look at the statute *on its face* to determine whether it actually provides for a criminal sanction, rather than evaluating the character of the actual sanctions as imposed."); *Depsky v Commonwealth*, 50 Va App 454, 467; 650 SE2d 867 (2007); Todd W. Wyatt, Comment, *Double Jeopardy and Punishment: Why an As Applied Approach, As Applied to Separation of Powers Doctrines, Is Unconstitutional*, 24 Seattle U L Rev 107, 109 (2000) ("*Hudson* specifically overruled *Halper* by mandating that the punitive/nonpunitive nature of a statute be determined solely by analyzing the statute on its face, and not as applied to the defendant. In other words, the facts of the specific case are irrelevant to the punitive/nonpunitive inquiry, and instead the analysis focuses on the words and purposes of the statute itself. This is an 'on its face' double jeopardy approach.").

In addressing a double jeopardy argument that the civil penalties imposed upon a defendant were actually criminal in nature because the defendant gained no monetary benefit from his actions, the Eleventh Circuit Court of Appeals held that the defendant's actual penalty was not a proper consideration under *Hudson*:

> On appeal, Melvin argues in large part that the district court erred in failing to consider whether the penalties—as applied to Melvin (or to a class of similarly-situated defendants who reaped no personal profit as a result of the conduct)—were punitive in effect. This argument is without merit. The law is clear that, in considering whether a nominally civil remedy rises to the level of a criminal penalty for purposes of the Double Jeopardy Clause, we consider *only* the statutory language, and not the specific penalties as applied in a particular case. [*United States v Melvin*, 918 F3d 1296, 1299 n 3 (CA 11, 2017).]

Nor, as the *Seling* Court held in reliance on *Hudson*, can a statutory punishment that is determined to be civil, "be deemed punitive 'as applied' to a single individual in violation of the Double Jeopardy" Clause. *Seling*, 531 US at 267. As Justice Scalia clarified in his *Seling* concurrence:

> The short of the matter is that, for Double Jeopardy and *Ex Post Facto* Clause purposes, the question of criminal penalty *vel non* depends upon the intent of the legislature; and harsh executive implementation cannot "transfor[m] what was clearly intended as a civil remedy into a criminal penalty," *Rex Trailer Co v United States*, 350 US 148, 154; 76 S Ct 219; 100 L Ed 149 (1956), any more than compassionate executive implementation can transform a criminal penalty into a civil remedy. [*Selig*, 531 US at 269 (SCALIA, J., concurring).]

Rather than invalidating a statute (or regulation) that evinces a civil punishment when the executive acts excessively pursuant to that statute, the *Seling* Court recognized the existence of other state and federal remedies as the proper tool for challenging excessive punishment on an individual. See *id*. at 265-266, and 269-270 (SCALIA, J., concurring). Hence, when we previously analyzed the guideposts from *Kennedy v Mendoza-Martinez*, 372 US 144, 168-169; 83 S Ct 554;

9 L Ed 2d 644 (1963), we properly limited our review to the text of the MDOC's administrative rules and policies.[4]

In his response brief, defendant does not discuss this proposition, but instead focuses on the physical and psychological damage that an individual can receive from extended periods of solitary confinement. And, in doing so, he cites only two decisions, neither of which address a double jeopardy argument. See *Porter v Clarke*, 923 F3d 348, 353 (CA 4, 2019) (addressing an Eighth Amendment challenge), and *Williams v Secretary of Penn Dep't of Corrections*, 848 F3d 549, 552 (CA 3, 2017) (addressing a due process clause challenge). Ironically, those cases do reflect what the *Seling* Court noted: there are other legal avenues available to redress harm caused when a civil punishment is excessively administered against an individual. But when it comes to addressing a Double Jeopardy Clause question, i.e., whether the effects of a civil punishment are so excessive to be punitive and thereby criminal in nature, we must only consider the regulation on its face. Having done so, see *Adams*, 347 Mich App at 330-335, we continue to hold that the Double Jeopardy Clause did not preclude the state from prosecuting defendant for conduct that previously resulted in internal MDOC administrative punishment.

Affirmed.

/s/ Thomas C. Cameron
/s/ Christopher M. Murray
/s/ Michael F. Gadola

---

[4] If we were to consider the actual punishment imposed on defendant, we would reach the same conclusion. As recognized earlier in this opinion, the record is clear that, as a result of the MDOC proceedings, defendant received a 20-day segregation punishment, which is consistent with MDOC policies. Although this same incident played a role in the simultaneous modification to defendant's security classification, it was one of many incidents that were considered in that re-classification. But, as the trial court recognized, the 20-day detention was what was explicitly imposed for this one incident.