**Angela MOLINA, Plaintiff–Appellant,**

v.

**AURORA LOAN SERVICES, LLC, et al., Defendants–Appellees.**

No. 15–10456
Non–Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Dec. 2, 2015.

Angela Molina, Miami Springs, FL, pro se.

Nancy M. Wallace, Michael J. Larson, Akerman, LLP, Tallahassee, FL, William Patrick Heller, Law Offices of Akerman Senterfitt, Fort Lauderdale, FL, Brendan Herbert, Jeffrey Alan Trinz, Akerman, LLP, Miami, FL, for Defendants–Appellees.

Before MARTIN, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Angela Molina, proceeding *pro se,* appeals the district court's order dismissing her complaint against Aurora Loan Services, LLC and Nationstar Mortgage, LLC with prejudice for lack of subject-matter jurisdiction. She argues that the district court erred in (1) concluding it did not have subject-matter jurisdiction over the case; (2) dismissing the case with prejudice; and (3) declining to hold a hearing on the defendants' motion to dismiss. After a review of the record and the parties' briefs, we affirm in part, reverse in part, and remand with instructions.

I

On March 7, 2007, Ms. Molina took out a $444,000 loan in order to purchase a home. Several months later, on November 1, 2007, she defaulted on her mortgage loan. On March 13, 2008, Aurora filed a foreclosure complaint in state court against Ms. Molina. The state court entered a final judgment of foreclosure in favor of Aurora on February 20, 2009, and set a public sale for the property on June 26, 2009. Ms. Molina did not appeal the judgment.

The public foreclosure sale was postponed for nearly four years, during which time Ms. Molina attempted to negotiate a loan modification with Aurora and Nationstar. In 2012, Ms. Molina began a loan modification process with Aurora. After Nationstar became the loan servicer on the property in July of 2012, Ms. Molina began a loan modification process with Nationstar. Ms. Molina claims, in part, that Aurora and Nationstar discriminated against her during the loan modification process on the basis of her race, age, and native language.

On January 9, 2013, Aurora purchased the property through a public sale. Ms. Molina filed a motion to vacate the sale that same day, arguing that loan modification review was still pending. The motion was denied, and the state court clerk issued a certificate of sale on January 14, 2013. Ms. Molina filed another motion to vacate the sale, but that motion was also denied.

On March 19, 2014, Ms. Molina filed a complaint in state court against Aurora and Nationstar. She alleged that both defendants wrongfully denied her a post-judgment mortgage loan modification in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691; the Fair Housing Act, 42 U.S.C. § 3605; the Troubled Asset Relief Program (TARP), 12 U.S.C. §§ 5211–5241; the Home Affordable Modification Program (HAMP), 12 U.S.C. § 5219a; and Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204. Ms. Molina sought an order enjoining Aurora and Nationstar from taking her property and removing her from her home, as well as $500,000 in compensatory damages and $3 million in punitive damages. In her complaint she alleged that, despite several letters from Nationstar assuring her that her home would not be sold while her loan modification request was being evaluated, her home was sold in early 2013.

The defendants removed the case to federal district court in April of 2014 pursuant to 18 U.S.C. §§ 1331 and 1441(a). They argued that the district court had federal-question jurisdiction because Ms. Molina asserted various federal claims, and had supplemental jurisdiction over her state-law claims. Once in federal court, the defendants filed a motion to dismiss Ms. Molina's complaint on the grounds the district court lacked subject-matter jurisdiction under the *Rooker–Feldman* doctrine, the *Colorado River* doctrine, and the Anti-Injunction Act, 28 U.S.C. § 2283. They also alleged that Ms. Molina failed to state claims upon which relief could be granted.

The district court granted the defendants' motion, and dismissed the case with prejudice. The district court held that the *Rooker–Feldman* doctrine barred federal jurisdiction because Ms. Molina's claims were "inextricably intertwined with a state court's foreclosure judgment." Because the district court found that it lacked subject-matter jurisdiction under the *Rooker–Feldman* doctrine, it did not address the defendants' other arguments for dismissal. The district court also ruled that because "amending the complaint would not cure the jurisdictional defect," the complaint would be dismissed with prejudice.

Ms. Molina now appeals. She asks us to vacate the district court's order because there is subject-matter jurisdiction, as she is not attacking the state court's entry of foreclosure judgment, but rather the defendants' discriminatory actions when she attempted to modify her loan post-judgment. Ms. Molina also contends that dismissal with prejudice was improper. Finally, Ms. Molina argues that the district court abused its discretion in declining to hold a hearing on the defendants' motion to dismiss before granting the motion.

**II**

We review a district court's grant of a motion to dismiss for lack of subject-matter jurisdiction *de novo*. *See Popowski v. Parrott,* 461 F.3d 1367, 1372 (11th Cir. 2006). *See also Miccosukee Tribe of Indians Fla. v. Army Corps of Eng'rs,* 619 F.3d 1289, 1296 (11th Cir.2010) ("The district court's grant of a motion to dismiss for lack of subject matter jurisdiction presents a legal question that we review *de novo*."). "We review the court's decision to rule on the motion to dismiss without an evidentiary hearing for abuse of discretion." *Sunseri v. Macro Cellular Partners,* 412 F.3d 1247, 1250 (11th Cir.2005) (*citing Washington v. Nortan Mfg., Inc.,* 588 F.2d 441, 443 (5th Cir.1979)).

**A**

The *Rooker–Feldman* doctrine takes its name from two Supreme Court cases, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413,

44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Those decisions collectively hold that a federal district court may not review and reverse a state-court civil judgment. Only the Supreme Court of the United States has appellate jurisdiction over judgments of state courts in civil cases. *See* 28 U.S.C. § 1257; *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 292, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).

The *Rooker–Feldman* doctrine applies to claims that were actually raised in the state court and those "inextricably intertwined" with the state court judgment. *Casale v. Tillman,* 558 F.3d 1258, 1260 (11th Cir.2009) (citing *Powell v. Powell,* 80 F.3d 464, 467 (11th Cir.1996)). "A claim is inextricably intertwined if it would effectively nullify the state court judgment ... or it succeeds only to the extent that the state court wrongly decided the issues." *Id.* (internal quotation marks and citation omitted). The doctrine, however, does not apply where a party did not have a "reasonable opportunity to raise his federal claim in state proceedings." *Powell,* 80 F.3d at 467.

■ The Supreme Court has cautioned that the scope of the *Rooker–Feldman* doctrine is narrow and is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.,* 544 U.S. at 284, 125 S.Ct. 1517. *See also Lance v. Dennis,* 546 U.S. 459, 464, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006) (per curiam) (noting the "narrowness" of the *Rooker–Feldman* rule). This case does not completely fit the *Rooker–Feld-*

*man* mold. To the extent that Ms. Molina sought vacatur of the foreclosure judgment, the state court properly dismissed that aspect of the complaint. But Ms. Molina's complaint did not just invite district court review of a state-court judgment against her. Indeed, her principal claim—that the defendants discriminated against her during the loan modification process—was not addressed by the foreclosure judgment, nor could it have been since the alleged discrimination occurred after the state foreclosure judgment had been rendered. *Rooker–Feldman* did not bar those post-judgment discrimination claims. *See Skinner v. Switzer,* 562 U.S. 521, 532, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011) ("If a federal plaintiff presents an independent claim, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court.") (internal quotation marks and brackets omitted).

Moreover, Ms. Molina's arguments with respect to the alleged discrimination she endured during the post-judgment loan modification process could not have been reasonably raised in the state court foreclosure proceedings. *See Wood v. Orange Cnty.,* 715 F.2d 1543, 1546–47 (11th Cir. 1983) (noting that the *Rooker–Feldman* doctrine only precludes federal court review of claims the plaintiff has a reasonable opportunity of raising before the final state court judgment is entered). Ms. Molina did not apply for a loan modification until 2012—two years after the foreclosure judgment was entered. Obviously, she could not have been expected to bring claims based on alleged discriminatory conduct that had not yet occurred. The *Rooker–Feldman* doctrine is inapplicable to those claims. *See Powell,* 80 F.3d at 467.

## B

The defendants also argue that the district court lacked jurisdiction under the Anti–Injunction Act, which bars a federal district court from enjoining state proceedings "except as authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Because Ms. Molina's prayer for relief included a request "to stop [her] removal [from] the property," Aurora and Nationstar contend that she seeks to enjoin the state court proceedings by prohibiting the execution of a writ of possession.

Although the Anti–Injunction Act limits the reach of the equitable powers of the federal courts, it is not a jurisdictional statute. *See Trustees of Carpenters' Health & Welfare Trust Fund of St. Louis v. Darr*, 694 F.3d 803, 807 n. 2 (7th Cir. 2012) ("The Anti–Injunction Act is not jurisdictional; rather, it restricts a district court's remedial authority.") (internal citations omitted); *Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*, 551 F.3d 812, 818 (8th Cir.2009) ("Where it applies, the Anti–Injunction Act does not withdraw subject-matter jurisdiction from the federal courts. Rather, as its name suggests, the Anti–Injunction Act merely restricts federal courts' authority to issue a particular type of equitable relief."); *Gloucester Marine Rys. Corp. v. Charles Parisi, Inc.*, 848 F.2d 12, 15 (1st Cir.1988) ("The [Anti–Injunction] Act is not strictly jurisdictional; it merely deprives the federal courts of the power to grant a particular form of equitable relief."); *Mooney Aircraft Corp. v. Foster (In re Mooney Aircraft, Inc.)*, 730 F.2d 367, 372–73 (5th Cir.1984) (same). *See also Peterson v. BMI Refractories*, 124 F.3d 1386, 1395 (11th Cir.1997) (determining whether the district court had subject-matter jurisdiction over an action before deciding whether the Anti–Injunction Act barred injunctive relief).

Even if the Anti–Injunction Act bars a federal court from granting an injunction, it does not interfere with that court's power to render a judgment on the merits. Nor does it limit the power of the district court to award compensatory and punitive damages. Although the Anti–Injunction Act precludes the district court from granting Ms. Molina's requested injunction, it has jurisdiction to render a judgment on the merits and the remedial authority to award the compensatory and punitive damages Ms. Molina seeks.

## III

Having determined that the district court had subject-matter jurisdiction to decide the case on the merits, we next consider whether the dismissal of Ms. Molina's claims should be affirmed under Federal Rule of Civil Procedure 12(b)(6). On appeal, Aurora and Nationstar contend that dismissal was proper because Ms. Molina failed to state claims upon which relief may be granted. They made this argument to the district court too, but that court did not reach it given its reliance on the *Rooker–Feldman* doctrine. Nonetheless, a prevailing party is entitled to defend its judgment on any ground preserved in the district court. *See Massachusetts Mutual Life Ins. Co. v. Ludwig*, 426 U.S. 479, 481, 96 S.Ct. 2158, 48 L.Ed.2d 784 (1976). *See also Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir.2015) ("This Court may affirm for any reason supported by the record, even if not relied upon by the district court.").

"To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct.

1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Although a court is required to accept as true all allegations contained in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955; *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. In general, a *pro se* complaint is held to less stringent standards than formal pleadings drafted by lawyers. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).

## A

▮ Ms. Molina brings a claim against Aurora and Nationstar under the Equal Credit Opportunity Act (ECOA), which makes it unlawful for any creditor to discriminate against any applicant on the basis of race, color, religion, national origin, sex, marital status, or age. 15 U.S.C. § 1691(a)(1). To be liable under the ECOA, a creditor must take an "adverse action" against the plaintiff. *Id.* § 1691(d). The Act defines "adverse action" as "denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." *Id.* § 1691(d)(6). It also carves out exceptions for actions that are not considered "adverse actions." Among the actions not considered adverse is the refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default. *See id.* The regulations propagated under the ECOA similarly exclude from the definition of "adverse action" any action or forbearance taken with respect to an account that is delinquent or in default. *See* 12 C.F.R. § 202.2(c)(2)(ii).

It is undisputed that Ms. Molina had already defaulted on her mortgage loan when she requested a loan modification. Under the plain language of the ECOA and its regulations, Aurora's and Nationstar's refusal to allow Ms. Molina to modify her loan, which was in foreclosure, does not constitute an adverse action and is therefore not actionable. Because Ms. Molina has not alleged that she suffered an adverse action within the meaning of the ECOA, her claim for discrimination fails and was properly dismissed.

## B

▮ Ms. Molina also alleged that Aurora and Nationstar violated the nondiscrimination requirements of the Fair Housing Act, which prohibits any person or entity "whose business includes engaging in residential real estate-related transactions" to discriminate against any person "in making available such a transaction, or in the terms or conditions of such a transaction," due to that person's race, color, religion, sex, handicap, familial status, or national origin. 42 U.S.C. § 3605(a). The Act defines a "real estate-related transaction" to include the "making or purchasing of loans or providing other financial assistance" for purchasing or maintaining a dwelling, or where the loan or financial assistance is secured by residential real property. *Id.* § 3605(b).

Aurora and Nationstar argue that Ms. Molina cannot bring an FHA claim against them because they are merely loan servicers, and neither was the originating lender on her mortgage loan. But Ms. Molina's FHA claim arises from the alleged discrimination she endured while she was trying to obtain a loan modification, not from any conduct on the part of the originating lender. The defendants do not cite to any authority, and we found none, indicating that a mortgage loan modification from a plaintiff's loan servicers fails to qualify as a "real estate-related transac-

tion" under the FHA. Therefore, we will consider whether Ms. Molina's complaint sufficiently alleged that she was denied a loan modification because of her race, color, religion, handicap, familial status, or national origin.

To evaluate a claim of discrimination under the FHA, we use the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a *prima facie* case of discrimination, Ms. Molina must demonstrate that (1) she is a member of a protected class, (2) she attempted to engage in a "real estate-related transaction" with Aurora and Nationstar, and met all relevant qualifications for doing so; (3) Aurora and Nationstar refused to engage in the transaction despite Ms. Molina's qualifications; and (4) Ms. Molina continued to engage in that type of transaction with other parties outside of the plaintiff's class with similar qualifications. *See Rowe v. Union Planters Bank of Se. Missouri*, 289 F.3d 533, 535 (8th Cir.2002); *Sec'y, United States Dep't of Hous. and Urban Dev., on Behalf of Herron v. Blackwell*, 908 F.2d 864, 870 (11th Cir.1990).

To withstand a motion to dismiss, a plaintiff asserting discrimination under the FHA need not allege specific facts establishing a prima facie case. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Still, in order to avoid dismissal, a plaintiff's complaint "must provide 'enough factual matter (taken as true) to suggest' intentional . . . dis-

crimination." *Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

Ms. Molina alleges she "had to endure several times the harassment and derogatory remarks" of Aurora and Nationstar employees during the loan modification process, including questions and remarks about her age and ability to speak English.[1] She also claims that Aurora asked her to provide documents "which are not required in a regular loan modification process," including a copy of her passport, her son's birth certificate, professional references, and bank statements. After she provided the requested information, Aurora allegedly informed her that it "does not waste its time giving loan modifications to borrowers with toxic loans."

Even construed liberally, the factual allegations in Ms. Molina's complaint fail to state a plausible claim of intentional discrimination. In her complaint, Ms. Molina informed the court that she is a 63–year–old Hispanic woman, and that she was denied a loan modification request in 2012. Nowhere, though, does she allege facts to "draw the reasonable inference" that her loan modification was denied because of her membership in a protected class. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. The alleged comments made by Aurora and Nationstar employees are not "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (11th Cir.2010). The comments do not suggest that the defendants were

---

1. Ms. Molina alleges that Aurora and Nationstar employees made the following remarks: (a) How did you obtain the loan to buy your house if you are a middle aged Hispanic woman who does not speak English?; (b) How did you obtain a loan if you are not a legal resident of the United States?; (c) Why don't you relinquish the keys of your house to the bank as other borrowers with high risk loans already did?; (d) How do you have a corporation in this country if you do not speak English?; (e) How old are you, and how are you planning to pay the mortgage in the next 20 years?; (f) It is illegal to operate a business if you do not speak English; (g) Aurora Loan Services is not interested in high risk loans.

motivated by discriminatory animus when they denied Ms. Molina's loan modification. The reason given for the denial—a refusal to lend to borrowers with "toxic loans"—does not relate to Ms. Molina's membership in a protected class. Furthermore, the complaint lacks any allegation that Ms. Molina qualified for a loan modification. Rather, her allegations and the evidence submitted with the motion to dismiss showed that she had been in default on her loan since March of 2008, and in foreclosure proceedings since February of 2009. In sum, Ms. Molina's allegations of discrimination are conclusory and insufficient under the *Twombly* pleading standard to survive a motion to dismiss.

**C**

■ Next, we determine whether Ms. Molina's claims under the Troubled Asset Relief Program (TARP) and the Home Affordable Modification Program (HAMP) stated claims upon which relief may be granted. TARP designates financial institutions as financial agents of the federal government, and requires them to perform all reasonable duties as such. *See* 12 U.S.C. § 5211(c)(3). It also authorizes the Secretary of the Treasury to implement a plan to maximize assistance to homeowners and minimize foreclosures, and authorizes federal property managers such as the Federal Housing Finance Agency to implement plans to do the same, including facilitating the modification of the loans. *See id.* §§ 5219(a)(1), 5220(b)(1)-(2). HAMP provides mortgage servicers with guidelines they must follow, including guidelines for the modification of mortgage loans. *See* 12 U.S.C. § 5219a.

■ We have held that no private right of action exists under HAMP. *See Miller v. Chase Home Finance, LLC,* 677 F.3d 1113, 1116 (11th Cir.2012). Therefore, Ms. Molina has no claim under HAMP.

In creating TARP, Congress authorized judicial review of the Secretary's decisions, but it did not mention a private right of action against non-governmental entities. *See* 12 U.S.C. § 5229. The Supreme Court has held that "where a statute by its terms grants no private rights to any identifiable class," the question of whether the statute creates a private right of action "is definitely answered in the negative." *Gonzaga Univ. v. Doe,* 536 U.S. 273, 283–84, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002) (internal quotation marks and bracket omitted). Even where a statute is phrased in explicit rights-creating terms, a plaintiff suing under an implied private right of action "still must show that the statute manifests an intent to create not just a private *right* but also a private *remedy.*" *Id.* at 284, 122 S.Ct. 2268 (quotation marks and citation omitted). Because TARP does not provide a private right of action, we agree with the Sixth Circuit that no such right exists. *See Mik v. Fed. Home Loan Mortg. Corp.,* 743 F.3d 149, 160 (6th Cir. 2014) ("Congress ... did not provide a private right of action against individuals or non-governmental entities who violate TARP's provisions.").

Because no private right of action exists under TARP or HAMP, Ms. Molina's general claims that Aurora and Nationstar did not comply with their obligations under these laws fail.

**D**

The Florida Deceptive and Unfair Trade Practices Act (FDUTPA) prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). To state a claim under the FDUTPA, a plaintiff must show (1) a deceptive act or unfair trade practice, (2)

causation, and (3) actual damages. *See Dolphin LLC v. WCI Cmties., Inc.,* 715 F.3d 1243, 1250 (11th Cir.2013). "[D]eception occurs where there is a representation, omission, or practice that is likely to mislead a consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Grp., Inc.,* 480 F.3d 1281, 1284 (11th Cir.2007) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.,* 842 So.2d 773, 777 (Fla.2003)). The deception must be "probable, not possible," and must be likely to cause injury to a reasonably relying consumer. *Id.* Actual damages are "real, substantive and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury." *Kehoe v. Fidelity Fed. Bank & Trust,* 421 F.3d 1209, 1213 (11th Cir.2005).

■ Here, Ms. Molina did not assert sufficient factual allegations to state a claim under the FDUTPA. First, she did not allege any deception that was likely to deceive a reasonable consumer. Rather, she alleged that the websites for Aurora and Nationstar "assured to their borrowers and public in general that they will help their clients facing long term hardship to cure his/her default with loan modification." Other than alleging that Aurora and Nationstar denied her own loan modification, Ms. Molina did not explain what was deceptive about the websites. A reasonable consumer would not interpret the assertion on the websites to mean that a borrower would be guaranteed a loan modification if she applied for one. *See Zlotnick,* 480 F.3d at 1284. Second, Ms. Molina made no allegation as to causation; she did not allege that, but for the quoted statement on Aurora's and Nationstar's websites, she would not have applied for (or would have received) a loan modifica-

tion. Therefore, she has failed to properly allege the elements of a FDUTPA claim.[2]

## E

■ Finally, the district court did not abuse its discretion in declining to hold a hearing before ruling on the motion to dismiss. Ms. Molina never requested a hearing on the motion and did not object to the lack of a hearing below. Generally, an argument raised for the first time on appeal is not properly before us. *See Access Now, Inc. v. Sw. Airlines Co.,* 385 F.3d 1324, 1331 (11th Cir.2004). And we have held that "courts will turn a deaf ear to protests that an evidentiary hearing should have been convened but was not, where ... the protestor did not seasonably request such a hearing in lower court." *Sunseri v. Macro Cellular Partners,* 412 F.3d 1247, 1250 (11th Cir.2005) (citation omitted).

Furthermore, it was within the district court's broad discretion to determine that a hearing was not necessary to resolve the issues before it. *See Washington v. Norton Mfg., Inc.,* 588 F.2d 441, 443 (5th Cir. 1979) (noting that the district court has "broad discretion" in resolving jurisdictional issues and "the judge may determine these issues by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.").

## IV

■ An order dismissing a complaint for lack of subject-matter jurisdiction must be without prejudice. *See Crotwell v. Hockman–Lewis Ltd.,* 734 F.2d 767, 769 (11th Cir.1984). *See also Georgia Advocacy Office, · Inc. v. Camp,* 172 F.3d 1294, 1299 (11th Cir.1999). As set forth above,

---

**2.** Because we conclude that Ms. Molina failed to state a claim under the FDUTPA, we do not address whether she properly alleged actual damages.

the district court properly dismissed every claim by Ms. Molina that sought to enjoin the state court proceedings or set aside the foreclosure judgment, as there was no federal jurisdiction for those claims. Those claims, therefore, are dismissed without prejudice.

As to Ms. Molina's post-judgment claims, those claims are dismissed under Rule 12(b)(6) on the merits. The ECOA, TARP, and HAMP claims are dismissed with prejudice. The FHA and FDUTPA claims are dismissed without prejudice. On remand, the district court shall enter an amended order of dismissal consistent with this opinion, and permit Ms. Molina to amend her FHA and FDUTPA claims if she is able to do so.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**