[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13884

_____

JIMMY SUGG,

                                        Plaintiff-Appellant,

*versus*

CITY OF SUNRISE,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:19-cv-62866-UU

_____

Before WILSON, LUCK, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

Jimmy Sugg appeals the district court's order granting summary judgment for the City of Sunrise on his disability discrimination claim under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12112, and dismissing his claim of retaliation under the ADA, 42 U.S.C. § 12203(a).  First, he argues that the district court erred by dismissing his ADA retaliation claim on the basis that he failed to exhaust his administrative remedies by not checking the retaliation box on his Equal Employment Opportunity Commission ("EEOC") charge.  Second, he argues that the district court erred in finding that he did not produce sufficient evidence showing that he was disabled under the ADA.  Third, he argues that the district court erred in finding that he failed to produce evidence that he made a specific demand for reasonable accommodations.  Fourth, he argues that the district court erred in determining that there was no evidence of the City's discriminatory intent in terminating him.

After careful review, and with the benefit of oral argument, we affirm the district court's dismissal of Sugg's retaliation claim, not for failure to exhaust administrative remedies, but for failing to state a plausible claim for relief.  We reverse the district court's grant of summary judgment on his reasonable accommodation theory of discrimination because a genuine issue of fact exists as to (1) whether Sugg was disabled and (2) whether he requested a reasonable accommodation.  We affirm summary judgment on all

other theories of discrimination because Sugg could not show discriminatory intent.

## I.    FACTUAL AND PROCUDERAL BACKGROUND

These facts are undisputed. The City of Sunrise (or, the "City") employed Sugg as the Chief Electrical Inspector. The Chief Electrical Inspector for the City of Sunrise works within the Building Department of the City of Sunrise's Community Development Department (the "Department"). The Director of Community Development runs the Department and oversees its employees. But the direct supervisor of the Chief Electrical Inspector is the head of the Building Department within the larger Department, who is known by the title, Building Official.

Sugg became familiar with the City of Sunrise in his prior role as the Chief Electrical Inspector for Broward County. In that capacity, Sugg oversaw inspections, electrical plans, and enforcement of the National Electrical Code for four cities, including the City of Sunrise. Sugg served the City of Sunrise for a year and a half on a contract basis while employed by Broward County. During this time, he regularly used the City of Sunrise's workspace and interacted with City of Sunrise staff, management, and customers.

During this time, Sugg was recruited to work for the City of Sunrise by then-Director of Community Development, Mark Lubelski. In April 2014, the month before Sugg was hired, Lubelski sent the Director of Human Resources and the Deputy Director of Community Development an email titled "Salary Justification," in

which he praised Sugg's "exemplary services" as the City's Chief Electrical Inspector (through his employment with Broward County), his "professionalism," and his "strong customer service focus."

In May 2014, Sugg was officially hired as the Chief Electrical Inspector for the City of Sunrise.  He was employed on a probationary basis for a nine-month term.  City of Sunrise probationary employees can be terminated at any time and for any reason during their probationary period, so long as the reason is not illegal or unlawful.[1]

## A.  Sugg's Heart Attack and Recovery Period

In October 2014, about five months into the probationary period, Sugg suffered a heart attack.  He was hospitalized for four days and was on leave for two weeks following his discharge.  Two days into his recovery, Sugg's name was no longer listed on the website under the title of Chief Electrical Inspector.  In its place was the name of Brian Epstein, a Broward County employee.[2]  And

---

[1] The City of Sunrise claims the probationary period is vital to its employment process and its purpose was to "evaluate [Sugg's] performance as the City's Chief Electrical Inspector and to determine whether [he] was a good fit to maintain future employment with the City."  Sugg claims that the City of Sunrise had a "Prolonged Observation Period" through his employment with Broward County, and that his probationary employment status was just a formality.

[2] According to the City of Sunrise, this change was required as the Board of Rules and Appeals ("BORA") regulations require a Chief Electrical Inspector to be in place at all times, so the City of Sunrise needed to appoint someone

sometime during his recovery, Sugg was decertified as a Chief Electrical Inspector. According to the City of Sunrise, this decertification was required because Christopher Augustin—who took over as Building Official during Sugg's recovery—discovered that Sugg was missing a necessary BORA certification to serve as Chief Electrical Inspector. And Augustin also testified that Sugg's certification had lapsed, and he encouraged Sugg to fill out the necessary paperwork to become recertified.

## B. Sugg's Return to Work

Upon his return to work, Sugg "noticed that management was treating him differently." Sugg testified that Steve Busick, a City Plans Examiner and Inspector, told him he "better watch [his] back" and "they're after you."

Sugg's doctor provided a note that stated he could return to work on October 22, 2014, "on light duty." Sugg says he gave a copy of the doctor's note to the newly appointed Building Official, Chris Augustin, and to then-Director Lubelski's assistant. Sugg followed up with an email to Lubelski stating he was back at work on "light duty" and that he gave the doctor's note to Lubeski's

---

during Sugg's absence. But Sugg contends that the BORA regulations also provide that the City Plans Examiner "shall" fill in during a Chief Electrical Inspector's absence. The City Plans Examiner at the time was Ed Wanamaker. Sugg contends that other Chiefs had been absent longer than he, without being replaced or removed from the website.

assistant. Lubelski replied later that day, welcoming Sugg back and stating, "If there is anything you need, please let me know."

The City of Sunrise had a policy of allowing employees to accept donated leave time from other employees. Although Lubelski asked Sugg if he would like employees to donate leave time, Lubelski told him one week later that he did not qualify to receive leave donations. Sugg claimed several other employees had received donated leave time, including an employee who had a heart condition.

Sometime during the remaining four months of his probationary employment Sugg was involved in an altercation with a City Plans Examiner, Ed Wanamaker. Sugg had performed an employment evaluation of Wanamaker on behalf of the City and Wanamaker was displeased with his evaluation. The conversation got heated; both men claim that the other acted aggressively and they both feared the other would become violent.

## C. Sugg's Termination

Having been decertified since October 2014, Sugg completed the necessary paperwork to once again be listed as the City's Chief Electrical Inspector in January 2015. BORA approves such recertifications, and Sugg's recertification was on its consent agenda for February 12, 2015. At the meeting, Sugg was recertified as the City's Chief Electrical Inspector without issue.

That same day, Sugg emailed then-Department Director Shannon Ley[3] and his direct supervisor, Augustin, wanting to know if February 13, 2015, which was the last day of his probationary period, would be his last day of employment, given that he had not received any further information from Human Resources about approving his permanent employment. Without a response to his email, he was discharged by the City on February 13, being told only that he was "not a good fit." Ley was the department Director at that time and thus the final decisionmaker on Sugg's termination, though she made the decision with input from former Director Lubelski and Augustin. The City claimed Ley, Lubelski, and Augustin all agreed that Sugg "was not a good fit" based on Sugg's alleged use of "vulgar and offensive language in the workplace," "abrasive encounters with co-workers," "receipt of customer complaints," and Sugg's "significant confrontation with Wanamaker where he aggressively got in Wanamaker's face." However, Sugg claims that two people later told Sugg he was terminated because of his heart attack: Broward County Building Official Jack Fisher and the previous Building Official, Dennis Pustizzi.

### D. EEOC charge and Federal Complaint

Sugg testified that he did not know that his heart condition could be a disability under the ADA until after he left the City's employ. About a month before filing his EEOC charge, Sugg was

---

[3] Ley became Director of the Department on January 19, 2015.

listening to the radio and heard about an employee who was fired because of his heart condition; he "knew at that point that [he] was covered" by the ADA. Sugg filed a charge with the EEOC about seven months after his discharge, on September 15, 2015. The EEOC charge form included a series of boxes listing different kinds of discrimination under the heading "DISCRIMINATION BASED ON (Check appropriate box(es).)" Sugg checked the "disability" box and left the "retaliation" box unchecked. In the area titled, "THE PARTICULARS ARE," he wrote:

> I am a qualified individual with a disability.
>
> I was admitted to the hospital on 10/9/14. I was immediately removed from my position as Chief Electrical Inspector. When I returned to work, I requested but was denied a reasonable accommodation on 11/9/14 from Mark Lubelski, Assistant City Manager. My duties were taken from me, I was demoted and I was terminated on 2/13/15.
>
> I believe I was discriminated against because of my disability in violation of The Americans With Disabilities Act of 1990, as amended.

On August 28, 2019, Sugg received a "Notice of Right to Sue" from the Civil Rights Division of the U.S. Department of Justice about his EEOC charge. He filed his initial complaint on November 19, 2019. His amended complaint—the operative complaint in this case—claimed he exhausted administrative remedies with the EEOC and alleged two counts under the ADA: Count I for disability discrimination and Count II for retaliation for

exercising his rights under the ADA.  The City subsequently filed a Rule 12(b)(6) motion to dismiss on both counts.

The district court denied the City of Sunrise's motion to dismiss the disability discrimination claim (Count I) but granted its motion to dismiss the retaliation claim (Count II) for failure to exhaust his administrative remedies by failing to check the retaliation box on his EEOC charge.  The district court did not reach the City's alternative argument that Sugg failed to properly plead his retaliation claim.

The City of Sunrise moved for summary judgment on Sugg's disability discrimination claims.  The district court granted the City's motion for summary judgment after finding that (1) Sugg failed to produce sufficient evidence that he was disabled under the ADA; (2) Sugg's "self-serving declaration and his own deposition testimony" were not sufficient to establish a genuine dispute as to whether he requested a reasonable accommodation, and moreover his purported requests were not "specific and identifiable"; and (3) there was no evidence of discriminatory intent for Sugg's termination.

Sugg timely appealed both the dismissal of his retaliation claim and the grant of summary judgment for the City of Sunrise on his discrimination claims.

## II.    STANDARD OF REVIEW

We review an order granting a motion to dismiss de novo, relying only on the complaint and those documents incorporated

by reference. *See* Fed. R. Civ. P. 12(d); *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1336–37 (11th Cir. 2010). To survive a motion to dismiss, a complaint must plead "sufficient facts to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Boyle v. City of Pell City*, 866 F.3d 1280, 1286 (11th Cir. 2017).

We also review a district court's order granting summary judgment de novo, viewing the evidence in the light most favorable to the nonmovant. *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1263–64 (11th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage, the City needs only point out the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to Sugg to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

## III.    ANALYSIS

We begin by addressing Sugg's argument that the district court erred by dismissing his retaliation claim for failure to exhaust administrative remedies and the City of Sunrise's alternative argument that we should still affirm because Sugg failed to plead a plausible retaliation claim. We then address the remaining issues Sugg raised about his discrimination claims.

### A.  Sugg's ADA Retaliation Claim

On appeal, Sugg's ADA retaliation claim requires this Court to determine whether Sugg exhausted his administrative remedies and, if so, whether his retaliation claim is still subject to dismissal. Because the district court dismissed Sugg's retaliation claim on administrative exhaustion grounds, it did not reach the City of Sunrise's alternative argument that Sugg failed to sufficiently plead his retaliation claim.  We may still consider this argument on appeal because "a prevailing party is entitled to defend its judgment on any ground preserved in the district court," and this Court "may affirm for any reason supported by the record, even if not relied upon by the district court." *Worthy v. City of Phenix City*, 930 F.3d 1206, 1216–17 (11th Cir. 2019) (first quoting *Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 623 (11th Cir. 2015); then quoting *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015)).  We discuss these issues in turn, and then consider Sugg's argument that he should be granted leave to amend in lieu of dismissal.

### 1.  *The district court erred in finding that Sugg failed to exhaust his administrative remedies.*

Before considering the merits of Sugg's claims, we address whether the district court erred in dismissing his retaliation claim for failure to exhaust his administrative remedies.  We review de novo the dismissal of a claim for failure to exhaust administrative remedies. *See Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004).

The district court dismissed Sugg's retaliation claim after finding that Sugg, by only checking the "discrimination" box on his EEOC charge and leaving the "retaliation" box unmarked, failed to exhaust his administrative remedies on his retaliation claim against the City of Sunrise.  This determination by the district court was in error, as even the City concedes in its answer brief, because under *Batson v. Salvation Army,* 897 F.3d 1320 (11th Cir. 2018), Sugg's ADA retaliation claim could have reasonably grown out of his charge of discrimination.  *See id.* at 1327–28.

Sugg's EEOC charge alleged that he was discriminated against because of his disability, but also included the following information:

> I was admitted to the hospital on 10/9/14.  I was immediately removed from my position as Chief Electrical Inspector.  When I returned to work, I requested but was denied a reasonable accommodation on 11/9/14 from Mark Lubelski, Assistant City Manager.  My duties were taken from me, I was demoted and I was terminated on 2/13/15.

A review of Sugg's amended complaint included claims of both discrimination *and* retaliation.  Specifically, Sugg claimed the City of Sunrise retaliated against him in violation of the ADA by terminating him for requesting a reasonable accommodation.

While an employee making a claim under the ADA must first exhaust his administrative remedies by filing an EEOC charge, we have been "extremely reluctant to allow procedural technicalities to bar claims brought under [discrimination statutes]" and have

20-13884            Opinion of the Court              13

advised that "the scope of an EEOC complaint should not be strictly interpreted." *Batson*, 897 F.3d at 1327 (alteration in original) (quoting *Gregory*, 355 F.3d at 1280). Thus, a party whose EEOC charge was only based on discrimination can also claim retaliation in a judicial complaint if "the facts alleged in her EEOC charge could have reasonably been extended to encompass a claim for retaliation because they were inextricably intertwined with her complaints of . . . discrimination." *Gregory*, 355 F.3d at 1280.

We have more than once held that a plaintiff's retaliation claim grew out of an EEOC charge, much like Sugg's. In *Gregory*, a plaintiff filed an EEOC charge that "had not claimed retaliation explicitly," yet sought to bring a retaliation claim against her employer in federal court. *Id.* at 1278. The EEOC charge in *Gregory* alleged that the plaintiff was terminated shortly after being subjected to allegedly discriminatory acts, and thus "[a]n EEOC investigation of her race and sex discrimination complaints leading to her termination would have reasonably uncovered any evidence of retaliation." *Id.* at 1280.

And in *Batson*, we held that the plaintiff who failed to check the "retaliation" box on her EEOC charge could pursue her retaliation claim. 897 F.3d at 1328. In *Batson*, the EEOC charge stated that the plaintiff believed she suffered discrimination because of her disability, that she had requested an accommodation, that her request was denied, and that she was later terminated. *Id.*

Relying on Eleventh Circuit precedent, the City of Sunrise concedes that Sugg's ADA retaliation claim "could have reasonably

grown out of his charge of discrimination." We agree. Thus, we conclude the district court erred by dismissing Sugg's retaliation claim on this basis.

\* \* \* \*

We now consider the City of Sunrise's alternative argument that we should affirm the dismissal because Sugg failed to plausibly allege the causation element of his retaliation claim—i.e., that the City of Sunrise retaliated against him because he engaged in activity protected by the ADA.

2. *Sugg's retaliation claim is subject to dismissal because he cannot establish causation.*

The antiretaliation provision of the ADA states in relevant part that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To state a viable claim for retaliation, a plaintiff must plead facts that plausibly support a finding that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse action; and (3) there was a causal link between the protected expression and adverse action. *Batson*, 897 F.3d at 1329. Sugg contends that his complaint alleged all three elements: (1) he requested a reasonable accommodation, a statutorily protected activity; (2) he was terminated, an adverse action; and (3) "[t]he temporal proximity between Sugg's requests for accommodations and termination[], combined with

other acts indicative of retaliatory animus, plausibly suggest a causal connection."

An ADA retaliation claim fails as a matter of law "[i]f there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). We have held that, without other evidence, a lapse of three months between the protected activity and retaliation is too attenuated to satisfy the causation element of a retaliation claim. *See id.* at 1221 ("By itself, the three month period . . . does not allow a reasonable inference of a causal relation between the protected expression and the adverse action."); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (Title VII case).

On appeal, Sugg claims he was terminated in retaliation for requesting a reasonable accommodation. According to the complaint, this request was made November 10, 2014, when he requested to work from home. The adverse action Sugg complains of—termination—occurred on February 13, 2015, about three months later. Therefore, to survive summary judgment, Sugg needs to show other evidence to satisfy causation. While Sugg claims there were "other acts indicative of retaliatory animus," he failed to allege any facts to support this claim.[4] Because Sugg does

---

[4] It is unclear what other adverse action he could rely on for this claim. As for his decertification, Sugg was decertified before returning to work, and thus before engaging in any protected activities. As for the removal of Sugg's name

not allege any evidence of retaliation aside from "temporal proximity," his claim fails as a matter of law under this Court's precedent. *See Higdon*, 393 F.3d at 1221. Because Sugg failed to plead facts that plausibly support a finding that there was a causal link between his protected activity and an adverse action, we conclude that he has failed to state a claim upon which relief can be granted. We therefore affirm the district court's dismissal of Sugg's retaliation claim.[5]

## B. Sugg's ADA Discrimination Claim

The remaining issues Sugg raises on appeal relate to whether the district court erred in awarding summary judgment to the City of Sunrise on his ADA discrimination claim. Because we

---

from the website, Sugg's complaint alleged that complaining about this alleged demotion was another protected activity.

[5] Sugg argues that if this Court concludes he did not sufficiently plead his retaliation claim, he should be given the opportunity to amend his complaint instead of dismissal. We have held, however, that courts need not "grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc). Here, Sugg's response to the City's motion to dismiss did not make this argument, and Sugg never sought leave to amend (for a second time) his amended complaint. Moreover, while the district court did not reach the merits of the Rule 12(b)(6) issue, the first time Sugg made this argument was in his reply brief. Thus, we decline to consider it here. *See United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir.2004) ("[This court] repeatedly has refused to consider issues raised for the first time in an appellant's reply brief.").

20-13884                Opinion of the Court                17

find that there are genuine issues of material fact about whether Sugg was disabled and whether he requested a reasonable accommodation, we reverse in part the district court's decision on those grounds. However, we agree with the district court that there is no evidence of the City's discriminatory intent in terminating Sugg, and affirm in part the district court's decision on that basis.

Sugg alleged that the City discriminated against him because of his disability by: (1) "[s]tripping [him] of his Chief Electrical Inspector position"; (2) "[d]enying [him] a reasonable accommodation"; (3) "[p]recluding [him] from benefitting from donated leave time allowed for other employees"; and (4) "[d]ischarging [him] because of his actual and perceived disability."

In deciding this claim, the district court found that, as a preliminary matter, Sugg failed to produce sufficient evidence that he was disabled under the ADA and thus was not entitled to its protections. The district court also found that the declarations provided by Sugg's doctors were conclusory and thus insufficient to create a genuine dispute as to whether Sugg was disabled. The district court then found that Sugg's discrimination claim would fail as a matter of law, even if he were disabled. First, it found that Sugg "failed to proffer any record evidence establishing that [he] made a specific demand for reasonable accommodation" that would trigger the City's obligation to provide one. Second, it found that Sugg could not establish discriminatory intent through a similarly situated comparator who was treated more favorably than he, or through a "convincing mosaic of discrimination."

Sugg argues that the district court erred by ignoring Sugg's own testimony and declarations about his disability and his requests for reasonable accommodations. We agree.

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability" in employment. 42 U.S.C. § 12112(a). To establish a prima facie case of employment discrimination under the ADA, a plaintiff must show that: (1) he has a disability; (2) he is a qualified individual; and (3) the defendant unlawfully discriminated against him because of the disability. *See, e.g.*, *Lewis v. City of Union City*, 934 F.3d 1169, 1179 (11th Cir. 2019). The phrase "discriminate against a qualified individual on the basis of disability" includes not making reasonable accommodations under certain circumstances. *See* 42 U.S.C. § 12112(b)(5)(A); *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1262 (11th Cir. 2007).

The City of Sunrise does not dispute that Sugg is a qualified individual. We therefore focus our analysis on whether Sugg demonstrated that there are triable issues of fact that he was disabled under the ADA and that the City of Sunrise (1) discriminated against him by ignoring his requests for reasonable accommodations, or (2) terminated him because of his disability.

1. *The district court erred by ignoring Sugg's own testimony about his disability.*

"[N]ot every impairment will constitute a disability" for purposes of the ADA. 29 C.F.R. § 1630.2(j)(1)(ii). Before we determine whether the City of Sunrise discriminated against Sugg because of

his disability, we must determine whether Sugg was disabled under the ADA definition. The district court found that Sugg did not present evidence to create a genuine issue of material fact as to whether he was disabled under the ADA. The district court found that the declarations provided by Sugg's doctors were conclusory and thus insufficient to create a genuine dispute as to whether Sugg was disabled. However, the district court ignored Sugg's own testimony about his limitations. Viewing the evidence in the light most favorable to Sugg, a reasonable jury could infer that his own testimony creates a triable issue on whether he was disabled under the ADA.

The ADA directs that "disability" be "construed in favor of broad coverage." 42 U.S.C. § 12102(4)(A). The relevant ADA definition of "disability" is "a physical or mental impairment that substantially limits one or more major life activities of such individual." *Id.* § 12102(1)(A). Thus, we must determine whether Sugg has sufficiently alleged an impairment that substantially limits one or more major life activities.

An impairment includes "[a]ny physiological disorder or condition . . . affecting one or more body systems," including "cardiovascular." 29 C.F.R. § 1630.2(h)(1). An impairment rises to the level of a disability "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." *Id.* § 1630.2(j)(1)(ii). This comparison "usually will not require scientific, medical, or statistical analysis." *Id.* § 1630.2(j)(1)(v). We are directed to construe the phrase

"'substantially limits' . . . broadly in favor of expansive coverage," and determining whether an impairment is substantially limiting "should not demand extensive analysis." *Id.* § 1630.2(j)(1)(i)–(iii); *see also* 42 U.S.C. § 12102(4)(B) (directing that "substantially limits" is to be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008, which sought to expand coverage).

Major life activities include, without limitation, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A); *see also* 29 C.F.R. 1630.2(i)(1)(i) (including additional activities). Major life activities also include "the operation of a major bodily function, including but not limited to . . . circulatory [also called cardiovascular] . . . functions." 42 U.S.C. § 12102(2)(B); *see also* 29 C.F.R. 1630.2(i)(1)(ii).

Our precedent requires that a plaintiff's evidence of disability include the timing, frequency, and duration of his impairments to survive summary judgment. *See Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1273–74 (11th Cir. 2020); *Lewis*, 934 F.3d at 1180. We have also held that conclusory allegations by a plaintiff or his doctors will not suffice. *See generally Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").

We have not explicitly held that a plaintiff's testimony is sufficient to establish the existence of a disability under the ADA. *See*

*Upton v. Day & Zimmerman NPS*, No. 2:15-CV-02131-AKK, 2018 WL 465979, at \*3 (N.D. Ala. Jan. 18, 2018) ("[I]n the absence of any citation to a case from the Eleventh Circuit, the court declines to find . . . that a diagnosis based solely on self-described complaints of subjective pain cannot qualify as a disabling impairment under the ADA.").  As the regulations accompanying the ADA do not require medical evidence to establish disability, we conclude that a plaintiff's own testimony is sufficient where it would allow a jury to reasonably determine that the plaintiff was disabled under the ADA.  *See* 29 C.F.R. § 1630.2(j)(1)(v); *see also* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: . . . citing to particular parts of materials in the record, including depositions, . . . affidavits or declarations, . . . or other materials."); *cf. Mancini v. City of Providence*, 909 F.3d 32, 43–44 (1st Cir. 2018) ("A plaintiff's detailed description of his limitations, standing alone, often will be sufficient to overcome the 'relatively low bar created by the substantially-limits and summary-judgment standards.'" (quoting *Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 448 (5th Cir. 2018))).

Sugg presented declarations from two doctors to establish he was disabled: Dr. Tallet, a cardiologist who treated Sugg after his heart attack, and Dr. Shawn, Sugg's primary care physician.  Dr. Tallet merely stated Sugg "would have issues" with several major life activities but stopped short of asserting that Sugg's heart attack caused 'substantial limitations' to those activities.  Dr. Shawn said Sugg would have "substantial limitations" but failed to explain how

or the degree to which he was substantially limited in those activities. The district court found that the declarations provided by Sugg's doctors were conclusory and thus insufficient to create a genuine dispute as to whether Sugg was disabled. We agree with the district court that these declarations are conclusory and do not create a genuine dispute of fact that Sugg was disabled within the meaning of the ADA. *Compare Hilburn v. Murata Elecs. N. Am., Inc.,* 181 F.3d 1220, 1227–28 (11th Cir. 1999) (holding that a doctor's affidavit asserting the plaintiff had a "diminished activity tolerance for . . . running" and was "substantially limited in performing manual tasks" was insufficient evidence of disability because it did not provide specific facts to support his medical conclusions), *with Mazzeo v. Color Resols. Int'l, LLC,* 746 F.3d 1264, 1268–69 (11th Cir. 2014) (holding that a physician's affidavit provided sufficient evidence of disability because it explained the employee's "medical condition, what specific pain the condition caused, and the limitations on 'major life activities' (as that term is broadly defined by the ADA) resulting from the condition and pain").

Sugg's own testimony, however, was not so conclusory. Sugg suffered a heart attack, which required surgery and hospitalization. Sugg testified, and the City acknowledged, that Sugg was diagnosed with heart disease at the emergency room following his heart attack. Heart disease such as Sugg's satisfies the low threshold of impairment. *See* 29 C.F.R. § 1630.2(h)(1); *Hilburn,* 181 F.3d at 1227 ("There is no question that heart disease constitutes a physical impairment under the ADA.").

20-13884            Opinion of the Court            23

Sugg also testified about how his heart disease and corre-sponding heart attack limited his daily activities.  Sugg testified that his ability to lift things—a "major life activity," as defined by the ADA—was apparently so limited that he could not lift "anything" and that he could not move things like pieces of drywall.  Among other limitations, he testified that he could only "go like 15 minute spurts" before having to stop to catch his breath.  Thus, Sugg spe-cifically alleged enough nonconclusory information that a jury could reasonably find that his heart disease has substantially limited the major life activities of (at least[6]) lifting and walking.  Viewing the evidence in the light most favorable to Sugg, we conclude there is a genuine dispute as to whether Sugg was disabled under the ADA.  We must now consider whether the district court erred in finding that Sugg failed to produce evidence that he made a specific demand for a reasonable accommodation.

2. *The district court erred by ignoring Sugg's own testimony about his request for a reasonable accommodation.*

As discussed above, the ADA prohibits employers from "dis-criminat[ing] against a qualified individual on the basis of disabil-ity" in employment.  42 U.S.C. § 12112(a).  The ADA explicitly

---

[6] Sugg testified to the following limitations, among others: he was "unable to lift anything"; he could not climb stairs due to shortness of breath; he could not get on ladders because he struggled with balance; he could not jump across ditches at job sites; he could "go like 15 minute spurts" before needing to rest and catch his breath; and he could not move drywall "and stuff like that to look behind things."

provides a cause of action under this Section to disabled, otherwise qualified individuals who are denied reasonable accommodations: "[T]he term 'discriminate against a qualified individual on the basis of disability' includes . . . not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless . . . the accommodation would impose an undue hardship on the operation of the business." *Id.* § 12112(b)(5)(A). To trigger an employer's duty to provide a reasonable accommodation, the plaintiff must make a specific demand for such an accommodation. *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999) (per curiam). The plaintiff also bears the burden of proving that the accommodation allows him to perform the job's essential functions—i.e., that the accommodation is reasonable. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255–56 (11th Cir. 2001). Only when the employer fails to provide the accommodation after the plaintiff demands it can the plaintiff sustain a discrimination claim under the ADA. *See Gaston*, 167 F.3d at 1363. This Court has not determined precisely what form a demand for an accommodation must take. *See Porterfield v. Soc. Sec. Admin.*, No. 20-10538, 2021 WL 3856035, at *6 (11th Cir. Aug. 30, 2021) ("[W]e have yet to determine "precisely what form the request [for a reasonable accommodation] must take." (alteration in original) (quoting *Holly*, 492 F.3d at 1261 n.14)). Whatever the precise standard may be, it is not a demanding one. *See, e.g.*, *Frazier-White v. Gee*, 818 F.3d 1249, 1256 (11th Cir. 2016) (accepting a plaintiff's handwritten note requesting to work "light-duty" and asking whether she had the

"option of . . . doing something else" as specific demands for accommodations (albeit unreasonable ones) (alteration in original)). But clearly, a plaintiff must at least provide enough information that the employer can be fairly said to know of both the disability and desire for an accommodation. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999).

The district court found that "the record is devoid of any evidence establishing [Sugg] made a specific demand for an accommodation." In making this determination, it refused to consider Sugg's "self-serving declaration and his own deposition testimony." Sugg argues the district court erred by ignoring this evidence. We agree. Viewing the evidence in the light most favorable to Sugg, his own testimony and declaration creates a triable issue of whether he made a specific demand for reasonable accommodation.

The record indicates that around November 10, 2014, Sugg requested to work from home, but the City denied his request "without any consideration or dialogue." He testified that he asked Augustin, his direct supervisor at the time, if he could work from home. Sugg admits he did not have to ask permission to tend to issues in the field (i.e., be out of the office) and that he had the autonomy to delegate tasks to individuals who worked under him, but he claims—and Lubelski admits—Sugg needed the City's permission to work from home. Sugg also testified that if there was no one willing or able to perform a task, he would have to do it

himself.   Sugg's purported requests for accommodations are expanded on by his own deposition testimony:

> I asked Christopher Augustine [sic] [if I could work from home].
>
> I explained to [Ley] that my doctor had released me on light duty and that I had given [Lubelski's assistant] the release notice and informed Christopher Augustine [sic] of my special needs and requirements.
>
> What I explained to them was that I was able to do the job but that because of my heart condition that, you know, it would be difficult at best and that I would prefer accommodations that were, you know, light duty accommodations, not driving, not walking upstairs, not jumping over ditches, not lifting. . . .
>
> And I also informed them that if there was no light duty to Christopher Augustine, [sic] that I would . . . work from [my] home on the computer or on the phone . . . . So I would have been able to do [the] chief's job.  I would have been able to actually, you know, being home, you know, obviously, go out in the field because I'm home.  But I could have carried on from the house . . . .

Viewing this testimony in the light most favorable to Sugg, he did not merely say he would "prefer" light duty accommodations. We read this testimony as making a specific request to work from home, though he would have preferred to stay in the office on "light duty," and justifying his requests by referring to his disability. Under this reading—a reading of the evidence in the light most

favorable to the nonmovant—Sugg made more than one specific demand for accommodation and offered the City multiple ways to accommodate his limitations.  He also established the reasonableness of these accommodations by showing the BORA regulations explicitly provide that the Chief Electrical Inspector "does not have to be personally present at the governmental department as long as he/she is available by telephone/computer etc. and can perform their duties."

In sum, Sugg presented evidence through his testimony that he requested accommodations, and the BORA regulations establish the reasonableness of his requests.  We therefore reverse summary judgment on Sugg's reasonable accommodation claim and remand for a jury trial on that claim.

### 3.  The district court did not err in concluding Sugg failed to establish discriminatory intent.

Along with his reasonable accommodation claim, Sugg asserts that the City of Sunrise discriminated against him by terminating him because of his disability.[7]  The district court found that Sugg failed to present evidence that would allow a reasonable jury

---

[7] Sugg originally alleged that the City discriminated against him by "stripping" him of his Chief Electrical Inspector position, precluding him from benefitting from donated leave time allowed for other employees, and terminating him, all because of his disability.  On appeal, his relies on his termination as the basis of his discrimination claim.

to conclude that he was terminated because of his disability.[8] Sugg argues, however, that the district court erred by failing to look at the evidence as a whole and ignoring his circumstantial evidence of discrimination, essentially requiring direct evidence of discrimination where the law says circumstantial evidence will suffice.

As discussed, the ADA prohibits discrimination by an employer "against a qualified individual on the basis of disability" in any of the "terms, conditions, [or] privileges of employment," including the "discharge of employees." 42 U.S.C. § 12112(a). When a plaintiff such as Sugg intends to prove discrimination through circumstantial evidence, the claim is assessed under the *McDonnell Douglas*[9] framework. *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004). Under *McDonnell Douglas*, Sugg has the initial burden of establishing a prima facie case of disability discrimination, i.e., to show (1) disability; (2) that he was otherwise qualified to perform the job; and (3) that he was discriminated against because of his disability. *Id*. Establishing a prima facie case creates a presumption of discrimination, and the burden then shifts to the City to articulate a legitimate, nondiscriminatory

---

[8] The district court further found that, even if Sugg could establish discriminatory intent, he would still lose on summary judgment because he failed to raise a reasonable inference that the City's nondiscriminatory reasons for terminating him were pretextual. We need not reach this alternative holding because we conclude that Sugg cannot establish a prima facie discrimination case based on his termination.

[9] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993) (Title VII case).

reason for his termination. *See id.* If the City meets this burden, the burden shifts back to Sugg to raise a reasonable inference that the City's reason is pretextual. *See id.* Sugg, however, does not pass the first hurdle. While Sugg has presented sufficient evidence that he was disabled, and there is no dispute he was qualified, we conclude that Sugg cannot establish causation—i.e., that the City took the alleged employment actions against Sugg because of his disability. Thus, he cannot make a prima facie case for discrimination.

To satisfy the causation element of a prima facie discrimination case, a plaintiff must present enough circumstantial evidence to allow a jury to infer intentional discrimination by the decisionmaker. *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (Title VII case). Sugg claims that there is "a mountain of undisputed record evidence" that would satisfy this standard. But the evidence Sugg points to is undermined by the record, even viewing it in the light most favorable to him. Sugg claims he was "stripped" of his position as Chief Electrical Inspector because he was "decertified," and his name was removed from the website. But Sugg concedes he had to fill out "necessary" paperwork and attend a BORA meeting before he could be certified to hold the position. Sugg does not allege there was any change in his compensation, and at Oral Argument, his attorney conceded that his duties never changed either: "It was a demotion in name, not in practice." Further, the record shows it was Sugg's former supervisor Dennis Pustizzi—whom Sugg does not accuse of

discrimination and who allegedly told Sugg he was terminated because of his heart attack—that appointed Broward County employee Brian Epstein to fill in during Sugg's recovery, in accordance with the BORA regulations. Sugg claims the City refused to allow him to accept donated leave time, though it generally allows such donations. But Sugg does not claim his requests for leave were ever denied; in fact, Sugg concedes "[a] total of nine (9) leave forms were completed for Sugg in the four (4) months between his heart attack and discharge." And in his deposition, when asked how much donated leave time he requested from then-Director Lubelski, he responded, "I asked him for no leave time."

Sugg also claimed Broward County Building Official Jack Fisher and Sugg's former supervisor Dennis Pustizzi both told him he was fired because of his disability. But Fisher does not work for the City and could not remember from whom he heard this information. There is no evidence that Fisher had, or had any reason to have, reputable information about Sugg's termination. Although Sugg asserted, too, that Pustizzi told him he was fired because of his heart attack, Pustizzi died before being deposed, and there was no other evidence that Pustizzi knew about the circumstances of Sugg's termination because he was no longer working for the City.

Thus, for the reasons stated, we conclude that a jury could not reasonably find that Sugg was terminated because of his disability. Because Sugg cannot make a prima facie case of discrimination on wrongful termination grounds, we affirm the district

court's grant of summary judgment for the City of Sunrise on this claim.

## IV.    CONCLUSION

For all these reasons, we affirm the district court's dismissal of Sugg's retaliation claim, not for failure to exhaust administrative remedies, but for failing to state a plausible claim for relief.  We reverse the district court's grant of summary judgment on his reasonable accommodation theory of discrimination because genuine issues of fact exist as to (1) whether Sugg was disabled and (2) whether he requested a reasonable accommodation.  And we affirm summary judgment on all other theories of discrimination because Sugg could not show discriminatory intent.

**REVERSED IN PART AND AFFIRMED IN PART.**